558     FIREMAN'S F. I. CO. *v.* CON. RODEPH SHOLOM.  [Sept. T.

Opinion of the Court.

THE FIREMAN'S FUND INSURANCE COMPANY

*v.*

THE CONGREGATION RODEPH SHOLOM.

1. INSURANCE — *exceptions in policy, how construed.* A clause in a policy of insurance that provides "if a building shall fall, except as the result of fire, all insurance by this company shall immediately cease and determine," is to be understood in the ordinary meaning of the words used. And so long as the building remains standing, no matter how much it may be depreciated by the action of the winds or any other cause, the liability of the company under the policy of insurance will continue.

2. SAME — *company liable if risk is permitted to stand after it becomes more hazardous.* Where a building which is insured against fire, is afterwards so damaged from other causes as to render the risk more hazardous, if the company does not take steps to cancel the policy, but permits the risk to stand, and the building is destroyed by fire, the company will be liable.

3. PARTIES — *in what name corporation to sue—pleading.* Where there are two statutes in force, under which a religious corporation can exist, and under one of which it can sue in its own name, it will be presumed that a suit is rightfully brought in the name adopted by such corporation, until that fact is put in issue by a proper plea for that purpose.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. BONNEY, FAY & GRIGGS, for the appellant.

Mr. ALLEN C. STORY, and Mr. RUFUS KING, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The defense in this case is based principally upon that clause of the policy upon which the action is brought, that declares "if a building shall fall, except as the result of fire, all insurance by this company shall immediately cease and determine." The position assumed is, the building insured had "fallen," in the sense that term is used in the policy, by the action of the winds upon it before the fire occurred which consumed it, and, hence, the insurance by the company had ceased and deter-

mined under the exemptions of the contract. The question is argued as one of law, rather than of fact, for the reason there is but little controversy as to what did occur; but the effect of the fact, it is insisted, is a matter of law. But it would seem to us to be purely a question of fact. Whether the building had fallen or was standing, is a fact easily determined, and about which there ought to be no controversy. Indeed, there is scarcely any conflict in the evidence as to the condition of the building at the time the fire occurred.

All the witnesses substantially agree in the description they give of the property. It was a church building, and stood upon posts or blocks. Not long before the fire, by the violence of the storm, it had been partly off the posts upon which it rested, by which it was greatly damaged, and so far rendered unfit for occupancy that most, if not all the movable furniture was taken out. After the storm, it leaned toward the street, was out of plumb, one end being higher than the other, but the building remained united. It had not fallen, although greatly damaged. That was all. The exemption clause of the policy was not that if the building should be damaged by causes other than fire, but "if a building shall fall," the policy should cease to be binding. These words are to be understood in their ordinary meaning.

It may be conceded, which is no doubt the fact, it was not the intention of the parties, the company would insure the materials, but the building itself. When that should cease to exist, by any cause, except as the result of fire, the insurance upon it and the contents was to terminate at once. This was the contract, and it was one the parties were competent to make; and when understandingly assented to by the assured, there is no reason why he should not be bound by it. But all the evidence in this case shows the building insured existed until it was destroyed by fire, but in a damaged condition. So long as the building remained standing, there could be no exemption from liability, under this clause of the policy, no matter how much depreciation there may have been by the action of the winds or any other causes.

It may be, the condition of the building, after the storm, rendered the risk more hazardous; if so, it was, perhaps, the privilege of the company to cancel the policy. Opportunity was afforded the company to rescind the insurance contract, on account of the changed condition of the property, had it chosen to do so. Previous to the fire, the company's agent had visited and, to some extent, inspected the building. He knew its condition, but did not inform the parties interested that the company would insist upon canceling the policy, but chose to allow the risk to stand. Had defendant canceled the policy, it might have been the owners could have effected other insurance. At all events, defendant did not undertake to rescind the insurance contract, although in possession of all the facts; and after the loss occurs, it is too late to insist the damaged condition of the building rendered the risk more hazardous.

The case of *Nave* v. *Home Mutual Insurance Co.* 37 Mo. 431, to which our attention has been directed, is not analogous with the case at bar. In that case, the insured building was used as a storeroom and warehouse, and, by reason of overloading the floors with merchandise, it fell and became a mass of rubbish, and the fire which occasioned the loss arose among the materials. No such condition of the building is shown by the proof in this case. Workmen skilled in that department of labor thought the building could have been repaired and placed back in its original position. When repaired, it would still be the same structure. Had it become a "mass of rubbish," as the building in the case cited, or had it "fallen," in the sense that word is employed in the exemption clause of the policy, no doubt the insurance would have terminated immediately, under the contract. The case of *Boyd* v. *Dubois*, 3 Campbell, 133, cited by counsel, illustrates no phase of the case in hand.

A motion was made in arrest of judgment, on the ground plaintiff was a religious society, incorporated under the laws of this State, in 1871, and, therefore, incapable of suing, except in the name of the trustees. The case of *Ada Street Methodist Church* v. *Garnsey*, 66 Ill. 132, is cited in support

of the position. But since that decision was rendered, it would seem, under a more recent statute, a religious corporation may sue in its own name. R. S. 1874, p. 292, sec. 35, 41. Notwithstanding this society may have been organized in 1871, it does not appear but it may have become incorporated under the recent statute, and, therefore, capable of suing in the corporate name adopted. There were two statutes in force, under which a religious corporation could exist, and it will be presumed the corporation could rightfully sue in the name adopted, until that fact is put in issue by a proper plea for that purpose. The fact objected to not appearing on the record, it can not be reached by a motion in arrest of judgment.

The point is made, the damages found are excessive. That was a question for the jury. It will be observed the evidence as to the value of the insured property immediately preceding the fire was quite conflicting. We are not, however, prepared to say it is not sufficient to sustain the verdict. The policy covered the contents as well as the building itself. It contained the tabernacle, chancel and pulpit, and all were in as good condition as when new. A good deal of ornamental work had been done on them, at considerable cost.

Upon the whole record we think justice has been done, and the judgment must be affirmed.

*Judgment affirmed.*