HERMAN HUCK & others *vs.* GLOBE INSURANCE COMPANY.
JAIRUS WALKER *vs.* QUEEN INSURANCE COMPANY.
L. S. STOWE & another *vs.* GIRARD FIRE AND MARINE
INSURANCE COMPANY.

Hampden.    Sept. 24, 1878. — Sept. 3, 1879.    AMES & SOULE, JJ., absent

In an action on a policy of insurance upon a building and upon the goods therein,
     containing a provision that "if a building shall fall, except as the result of a
     fire, all insurance on it or its contents shall immediately cease and determine,"
     it appeared that the eastern and western halves of the building mentioned in
     the policy were substantially distinct buildings, separated from each other by
     a brick partition wall extending from the front to the rear of the building and
     from cellar to roof, but with doors of communication in each story ; that in
     each of these two parts or buildings, midway between the partition wall and the
     end wall, there was a beam or girder in each floor, extending from the front to
     the rear, supported by brick piers in the cellar and by wooden posts in each
     story, and upon which the joists of the floor rested ; that by the giving way of
     the piers in the cellar of the eastern half of the building, without the agency
     of fire, the beam or girder resting thereon fell down near the ground, bring-
     ing with it the floors and partitions and roof above, with the goods and mer-
     chandise in each story, in a mixed and confused mass, excepting only very
     small portions of some of the floors and of the roof, and a single case of goods ;
     that only the outer walls of this part, and the brick partition wall, and an
     elevator in one corner, were uninjured by the fall ; that, after the fall, a fire
     broke out which caused the injury sued for to the goods which had fallen,
     and to the elevator and surrounding walls, with the doors and windows therein,
     which remained standing ; and that the west half of the building remained
     in all parts undisturbed and uninjured. *Held,* that the action could not be
     maintained.

THREE ACTIONS OF CONTRACT on policies of insurance.    By
the policy in the first case, the Globe Insurance Company of
Boston insured Herman Huck & Company $2000 "on tobacco
in cases, bales and bulk, including packing cases, their own or
held in trust or on commission, or sold but not delivered, all
contained in brick block 39 and 41 Hampden Street, Springfield,
Mass."

By the policy in the second case, the Queen Insurance Com-
pany of Liverpool and London insured J. Walker & Son, of whom
Jairus Walker was the surviving partner, $3500 "on their stock
of merchandise, consisting of fresh and salt provisions, lard and
tallow in barrels, fresh meat in quarters and carcasses, and other
stock not more hazardous ; also, on barrels, on steam-engine and

boiler, and on tools, furniture and fixtures, including safe and scales; all contained in Stowe & Parks's brick block, occupied in part by the assured as wholesale dealers and packers, situate on south side of Hampden Street, Springfield, Mass."

By the policy in the third case, the Girard Fire and Marine Insurance Company of Philadelphia insured L. S. Stowe and William F. Parks $2500 " on their three-story brick building situate on the south side of Hampden Street, Springfield, Mass."

Each of the policies contained a provision substantially as follows: " If a building shall fall, except as the result of a fire, all insurance by this corporation on it or its contents shall immediately cease and determine."

The three cases were tried in the Superior Court at March term 1878, before *Wilkinson*, J., and by consent of parties taken from the jury at the close of the plaintiffs' evidence, and reported to this court, in substance as follows:

The following facts appeared from undisputed testimony: The building mentioned in the policies was fifty-six feet wide in front and rear and seventy feet deep, built of brick and three stories high, with a cellar under it, and a brick partition wall through the centre of it from front to rear, with doors in this wall in each story; and an elevator about five feet square adjacent to this partition wall, near the southwesterly corner of the east half of the building, and extending from the cellar to the roof. There was a beam or girder on each floor, extending from the front to the rear of the building, both in the east and west halves thereof, which beams or girders were placed midway between the centre brick partition wall and the end walls of the building, and were supported by four brick piers in the cellar and by round wooden posts in the stories above. The floor joists in each half of the building extended from the partition wall and the end wall of that half to the girders in the middle, the outer ends being inserted in the brick walls and the inner ends resting on the girder, so that the floor joists were parallel with the front line of the building, and on these joists the floors were laid. There were no interior walls in the building, except wooden partitions dividing it into rooms, and the middle partition brick wall. The east and west halves of the building were numbered 39 and 41 respectively on Hampden Street.

The plaintiffs, Herman Huck & Co., occupied the whole west half of the building and the upper story of the east half of the building for a tobacco packing and cigar manufacturing establishment, and they had a large quantity of tobacco in cases stored in the upper story of the east half of the building. The plaintiff, Walker, occupied the first story and cellar in the east half with a pork and lard business, and had therein a large quantity of property, such as is described in his policy of insurance, including a small steam-engine and boiler, located on the first floor at or near the rear end of the building; while the second story was occupied by S. Palmer & Co., for the storage of a large quantity of flour. The plaintiffs, Stowe and Parks, were the owners of both halves of the building.

About two o'clock in the afternoon of September 29, 1876, one or more of the piers in the cellar, near the front, in the east half of the building, supporting the beam or girder on which the floor joists rested, gave way without the agency of fire, and the beam or girder fell down near to the ground, and the floors and roof above followed it, with the goods and merchandise stored and kept in the several stories in the east half of the building, into a mixed and confused mass; and, in consequence of this catastrophe, a fire was immediately started by the débris coming in contact with the fire in the fire-box under the steam-boiler in the rear end of the first floor, and the fire department was engaged several hours in subduing this fire. The southerly end of the beam supporting the joists of the first floor remained in its position in the south wall of the building, and sloped to a point about five feet from the ground, and at a distance about fifty feet northerly towards the front, and the boiler, engine and machinery of the pork and lard establishment remained substantially in their original position, near the rear of the building and covered with rubbish. The joists of this first floor sloped downward from the side walls towards the sloping girder. Some of them remained in position in the walls, but most of them were drawn out from the walls. The portion of this floor which remained substantially in place under the engine and boiler was about six or eight feet square. The entire roof of the east half fell, excepting about ten feet square in the southwest corner of the east half, and the entire floor next below the roof fell, except a

part in the same southwest corner near the elevator, about six feet square, and on this unfallen portion of the floor a stove and one case of tobacco remained in position. Two or three joists in the southerly portion of that floor kept their place, and all the tobacco stored on the third floor, except the case aforesaid, had fallen into the cellar.

The west half of the building remained in all parts undisturbed and uninjured. The elevator and all the brick walls of the east half were uninjured by the fall above described. The value of that part of the building which fell was one eighth of the value of the whole building (Nos. 39 and 41), but the defendants contended that the question of comparative value was immaterial and incompetent.

It was conceded that the property insured by the first and second policies was damaged by the fire; that the eastern wall and the partition wall of the building, the elevator, the doors and the window panes and casings, if injured at all, were injured by the fire; and that the plaintiffs would be entitled to recover, except for the accident which occurred to the building, as above stated.

If, upon these facts, the plaintiffs were entitled to recover, or if the jury would have been warranted in finding a verdict for them, the damages were to be assessed by an assessor; otherwise, judgment was to be entered for the defendants.

*M. P. Knowlton*, for the plaintiffs in the first and second cases.

*G. Wells*, for the plaintiffs in the third case.

*M. Wilcox & J. P. Buckland*, for the defendants.

GRAY, C. J. The manifest intent and purpose of the clause inserted in each of these policies, by which it is provided that, " if a building shall fall except as the result of a fire, all insurance by this corporation on it or its contents shall immediately cease and determine," is that the insurance, whether upon a building or upon its contents, shall continue only while the building remains standing as a building, and shall cease when the building has fallen and become a ruin. When substantially all the floors and the roof of a building used as a storehouse fall, leaving nothing standing but the outer walls and perhaps a stair-case or an elevator, the building must be deemed to have fallen

When several buildings or the goods therein are insured by the same policy, the fall of one building terminates the policy, at least on that building or its contents.

The report shows that the eastern and western halves of the block were substantially distinct buildings, separated from each other by a brick partition wall extending from the front to the rear of the block and from cellar to roof, (though with doors of communication in each story,) and each of the two parts or buildings capable of standing or falling by itself; that in each of these two parts or buildings, midway between the partition wall and the end wall, there was a beam or girder in each floor, extending from the front to the rear, supported by four brick piers in the cellar and by wooden posts in each story, and upon which the joists of the floors rested; that by the giving way of the piers in the cellar of the easterly part or building, without the agency of fire, the beam or girder resting thereon fell down near the ground, bringing with it the floors and partitions and roof above, with the goods and merchandise in each story, in a mixed and confused mass, excepting only very small portions of some of the floors and of the roof, and a single case of goods; and that only the outer walls of this building (of which the brick partition wall separating it from the adjoining building was one), and an elevator five feet square in one corner, were uninjured by the fall; that it was after the fall, that the fire broke out that caused the injury, for which recovery is sought in these actions, to the goods which had fallen, and to the elevator and to the surrounding walls, with the doors and windows therein, which remained standing; and that the west half of the building remained in all its parts undisturbed and uninjured.

Of the building forming the eastern half of the block, the roof and the whole interior, with all the floors and divisions thereof, had fallen, and nothing remained standing but the outer walls and the elevator, constituting a mere shell or ruin, and not a standing building in any proper sense. It follows that neither the goods precipitated by the fall into a confused mass, nor the walls of the ruined building, nor the elevator therein, were any longer at the risk of the insurers, and that in each of these cases a jury would not have been warranted in finding a verdict for the plaintiffs.

The decisions cited for the plaintiffs are not inconsistent with this conclusion. In *Fireman's Ins. Co.* v. *Congregation Rodeph Scholom*, 80 Ill. 558, the building, though shaken by a storm so . as to lean over, remained entire, and no part of it had fallen. In *Breuner* v. *Liverpool & London & Globe Ins. Co.* 51 Cal. 101, goods exceeding in value the amount of the insurance were destroyed by fire in that part of the building which had not fallen, and the decision against the insurers was by a bare majority of the court.

The result is, that in each case there must, according to the terms of the report, be          *Judgment for the defendant.*