NATHANIEL S. STIMPSON *versus* MONMOUTH MUTUAL FIRE IN-SURANCE COMPANY.

Where a policy of insurance against fire, issued by a mutual company, has been assigned, the assignment ratified by the company, and a new premium note given, and the assignee, by the terms of the charter or by-laws, there-by becomes a member of the company, he may, in case of loss, maintain an action on the policy in his own name.

Where the by-laws of an insurance company require the assured to give notice in writing of a loss, within sixty days, a letter written by an agent of the company, at the request of the assured, giving notice of the loss, and sent in due time, is a sufficient compliance with the requirement, although the fact of its having been written at his request does not appear in the letter.

ASSUMPSIT on a policy of insurance against loss by fire on buildings in Windsor.

The policy, dated September 13, 1854, was in favor of Joseph Marson, and for the term of four years, and was assigned by him to the plaintiff, Nov. 7, 1855, and the assignment ratified by the directors of the defendant company, Nov. 16, 1855.

The plaintiff introduced a deed from Marson to himself, dated Oct 10, 1855, but executed and delivered on the day of the assignment of the policy.

The buildings were burned October 22, 1857.

Thomas C. Davis, called by the plaintiff, testified that he

had been the agent of the defendants for six years prior to the loss; that he received Marson's application for insurance, and obtained his policy; that, after the assignment, he forwarded the policy to the defendants for their ratification; and that, after the loss, he wrote and sent by mail immediately, at the request of the plaintiff, the following letter to the defendants, to which he received no answer:—

" *W. Wilcox*, *Esq.*, Sir:—I regret that I am under the necessity of informing you that the barns of Harrison Gray, and the dwellinghouse and barn of N. Stimpson, were burned on the night of the 22d ult.

"Mr Stimpson's policy was transferred from Joseph Marson. I have waited to receive the number of their policy, but have not. Some other property was destroyed at the same time, evidently the work of an incendiary, but we have not been able to obtain sufficient proof to accuse any one as yet.

"I sent you some money a short time since, but received no return, though I have received returns of the applications sent at the same time.            "Yours,    T. C. Davis.

" Windsor, Nov. 3, 1857."

Washington Wilcox, secretary of the company, called by the plaintiff, testified, that he received the foregoing letter, he could not say when, but he presumed in due course of mail; that the company received no other notice from the plaintiff, but he had a letter from Stimpson after March term, 1858, inquiring when they would pay his claim. He further testified that, at the time the policy was assigned, the defendants received a new note signed by the plaintiff, and that they also retained and now had the note signed by Marson.

The plaintiffs introduced the following letter:—

        " Mut. Ins. Office, Monmouth, May 20th, 1858.

"Sir:—I am directed by the Board of Directors, that, at a meeting of said Directors on the 14th instant, the following vote was passed unanimously:—

" *Voted*, To disallow the claim of Nathaniel S. Stimpson,

of Windsor, because, in the opinion of the Directors, the loss he sustained was grossly careless or fraudulent..

"Washington Wilcox, *Secretary.*

"Nathaniel S. Stimpson, Windsor."

The plaintiff stopped here, whereupon the presiding Judge, MAY, J., ordered a nonsuit to be entered. The plaintiff excepted.

*George Evans,* for the plaintiff, argued that the action is rightly brought and may be maintained by the plaintiff in his own name. As assignee of the policy, he became a member of the company. The transaction created a new contract of insurance between the plaintiff and the company. *Wiggin* v. *Suffolk Ins. Co.,* 18 Pick., 145; *Foster* v. *Equ. Ins. Co.,* 2 Gray, 219; *Kingsley* v. *N. E. Ins. Co.,* 8 Cush., 400; *Wilson* v. *Hill,* 3 Met., 69. In *Fogg* v. *Mid. Ins. Co.,* 10 Cush., 345, the plaintiff failed because the assignment was imperfect, amounting only to an order to pay the amount in case of loss to the plaintiff, and no new note had been given by the assignee. The case of *Pollard* v. *Somerset M. F. Ins. Co.,* 42 Maine, 221, on examination, will not be found in conflict with the position here taken.

In New York, it has been held that, in case of assignment of a policy to secure a mortgage, the action should be in the name of the assignor. *Conover* v. *Ins. Co.,* 3 Denio, 254; *Jessel* v. *Wil. Ins. Co.,* 3 Hill, 88. But, in case of absolute conveyance, and assignment of policy, the suit must be in the name of the *assignee. Mann* v. *Herkimer Ins. Co.,* 4 Hill, 187.

In *Bowditch M. F. Ins. Co.* v. *Warren,* 3 Gray, 415, the want of a premium note, given by the assignee, was the turning point. In *Folsom* v. *Belknap Ins. Co.,* 10 Foster, 231, there was no provision in the charter or by-laws, authorizing the assignee to become a member of the company. Not so in the case at bar.

2. The notice of loss, given to the defendants by Davis, was sufficient. *Qui facit per alium, facit per se.*

Policies are to receive a liberal construction. 2 Parsons' Mer. Law, 480; *Talcut* v. *Mar. Ins. Co.*, 2 Johns., 130; *Lawrence* v. *Ocean Ins. Co.*, 11 Johns., 241; *Child* v. *Sun M. Ins. Co.*, 3 Saund., 26; *Barker* v. *Phenix Ins. Co.*, 8 Johns., 307.

The defendants made no objection for want of due and proper notice, but placed their refusal to pay on other grounds. This was a waiver of the objection of defective notice. *Hatch* v. *Frank. Ins. Co.*, 1 Cush., 265, and cases cited; *Clark* v. *N. E. M. F. Ins. Co.*, 6 Cush., 345, and cases cited; *Underhill* v. *Agawam Ins. Co.*, 6 Cush., 441; Angell on Ins., § 246.

*J. Baker*, for the defendants.

1. This action cannot be maintained, because the policy is a written contract between the defendants and Marson, and has no apt words of negotiability, as to order, bearer, holder or assignees. No action can, therefore, be maintained in the name of the assignee. *Pollard* v. *Som. Ins. Co.*, 42 Maine, 221; *Jessel* v. *Wil. Ins. Co.*, 3 Hill, 88.

If the assent of the defendants to the assignment, and taking a new note from the plaintiff, is a new promise by the defendants, by which the plaintiff is subrogated for Marson, the action should have been special assumpsit on the new promise, and not on the policy.

2. No notice was given of the loss within sixty days, as required by the by-laws. A notice is a condition precedent to the right to recover. Angell on Ins. § 226. The member suffering the loss is to give the notice. The plaintiff gave none. If he could give it by agent, the agent's authority should be stated in the notice.

The letter of Davis was a letter of information from the defendants' agent. It did not purport to be from the plaintiff, or written at his request. The company had no right to infer that it was, and did not.

The notice is important, as important action is to be based upon it. The directors are to act upon the notice, and adjudicate the amount of loss. To do this, they must know

that the notice was from the plaintiff. The objection is, not only that the notice is deficient, but that it is no such notice as the directors were bound to act upon.

3. It is said that notice was waived by the action of the directors in May, 1858. But where the courts have held notice to be waived, there had been an attempt to give notice, however defective. Here the plaintiff had not attempted to give any notice. Consequently, there could be no waiver.

Where there has been a defective attempt, and the company do not notify the insured of the defects, but place their refusals on other grounds, this is held to be a waiver, because it deters him from perfecting his performance. But this does not apply to the case at bar. Here the action of the directors was long after the sixty days had expired, and it was too late for the plaintiff to cure the defective notice or give a valid one.

The power of the directors is limited, and they could not bind the company by acts not within their authority. *Eastman* v. *Carroll Co. Ins. Co.*, 45 Maine, 307; *Hale* v. *M. M. F. Ins. Co.*, 6 Gray, 169. The sixty days having expired without notice, the contract was dead. The directors could not revive it. They could not decide to pay the loss without notice. Could their refusal to pay, in whatever language couched, revive a dead contract?

The opinion of the Court was drawn up by

GOODENOW, J. — This is an action of assumpsit, founded on a policy of insurance, made by the defendants to one Joseph Marson, dated September 13, 1854, for four years, and assigned by said Marson to the plaintiff, Nov. 7, 1855, which assignment was duly assented to, ratified and confirmed by the defendants, Nov. 16, 1855, by receiving of the plaintiff a new premium note, agreeably to their by-laws. Joseph Marson conveyed the buildings insured, with the land on which they stood, to the plaintiff, on the same day that he assigned the policy. The deed bears date, October 10, 1855, but it takes effect from the time of its delivery, and not from

the time of its date.    The buildings insured were destroyed by fire, October 22, 1857.

Upon the whole evidence put into the case by the plaintiff, the presiding Judge ordered a nonsuit.    We suppose,—

1st. Because this action cannot be maintained in the name of the assignee.

It is apparent from the facts proved that the plaintiff is the real party, that Marson has now no interest in the policy of insurance, in the property insured, in the cause of action or in this suit.

It will greatly promote the convenience of assignees, under such circumstances, in cases of losses by fire, to be enabled to maintain actions on policies duly assigned to them, in their *own names*.    And such a construction should be given to the law as will enable them to do so, unless there is some insurmountable legal objection.    It will greatly relieve the assignors and their representatives, also.    "*Argumentum ab inconvenienti* is forcible in law."

Upon the facts stated in the writ, and an examination of the charter of the company, and its by-laws, I have arrived at the conclusion that the action, if maintainable, can be maintained in the name of the plaintiff.

The writ states the whole case, from which a promise may be fairly deduced or implied, to pay the plaintiff as assignee of the policy, the amount of his loss.    It was a promise in the first instance to Marson, but a promise in the *alternative;* that is, a promise upon certain contingencies, to pay, not him, but his assignee; and those contingencies have happened.    The action is founded on the policy, but not on the policy alone.    The Act of incorporation, its purposes and object, as well as the by-laws of the company, are to be taken into consideration.    The second section provides—"That all and every person, who shall at any time become interested in said company, by insuring therein, and also their respective heirs, executors, administrators and *assigns*, continuing to be insured therein as hereafter provided, shall be deemed and taken to be members thereof, for and during the terms speci-

fied in their policies, and no longer, and shall at all times be concluded and bound by the provisions of this Act."

The ninth section provides that, "When the property insured shall be alienated by sale, or otherwise, the policy shall thereupon be void, and be surrendered to the directors of said company to be cancelled," &c.

It also provides, *however,* "that the grantee or alienee having the policy assigned to him, her or them, for his, her or their proper use or benefit, upon application to the directors, and with their consent, within thirty days after such alienation, on giving proper security to the satisfaction of the directors, for such portion of the deposit or premium note as shall remain unpaid, and, by such ratification and confirmation, the party causing the same shall be entitled to all the privileges and subject to all the liabilities to which the original party insured was entitled and subjected under this Act." By the proceedings had in this case the plaintiff became a member, and Marson ceased to be a member of the company. "The parties assumed towards each other the relation of insurer and insured." 18 Pick., 145; *Ib.*, 160. This is not inconsistent with the charter and by-laws, but in accordance with both.

The right of one, not a party to the original contract, to maintain an action in his own name; "does not rest upon the ground of any actual or supposed relationship between the parties, as some of the earlier cases would seem to indicate," says BIGELOW, J., in *Brewer* v. *Dyer*, 7 Cush., 340, "but, upon the broader and more satisfactory basis, that the law operating on the acts of the parties creates the duty, establishes the privity, and implies the promise and obligation, on which the action is founded."

In *Fogg* v. *Middlesex Mut. Fire Ins. Co.*, 10 Cush., 345, the plaintiff, who sued as assignee, failed in his suit because there was no legal assignment of the policy. No new premium note had been given. But the right of the assignee to maintain an action in his own name, where the assignment has

been perfected and ratified, is most distinctly recognized by SHAW, C. J.

In the case of *Pollard* v. *Somerset M. F. Ins. Co.,* 42 Maine, 221, the agreement of the parties rendered the decision of this question unimportant, and it was not decided.

The Court say, however, in that case,—"In the absence of any provision in the charter or by-laws of a mutual fire insurance company, whereby the assignee becomes a member of the company, the action, in case of loss, must be in the name of the assured with whom the contract was made," and cite 10 Foster, 231. In this case, the assignee does become a member of the company by the terms of the charter, upon · giving a new premium note, its acceptance and ratification of the assignment by the directors.

2. Was the notice actually given sufficient ?

Thomas C. Davis testified that he was the agent of the defendants; that he received and forwarded the application from Marson for the insurance and obtained the policy; and, that after the assignment was made, he forwarded the policy to the defendants for their ratification, and that, after the loss, he wrote a letter to W. Wilcox, at *the request of the plaintiff,* and sent it by mail immediately after, but never had any answer from the company acknowledging the receipt thereof. The letter makes a part of the case, and is dated Nov. 3, 1857.

Washington Wilcox, secretary of the defendant company, testified that he received the letter above referred to, could not say when, but supposed it was received in due course of mail. We may take it for granted, or as proved, that the notice, such as it was, was given and received within sixty days from the time of the loss. By section 7 of the charter, the insured "shall, ·within sixty days next after such loss, give notice thereof in *writing* to the directors, or some one of them, or to the secretary of said company." Davis may properly be regarded as the agent of the plaintiff *pro hac vice,* notwithstanding he was also the agent of the defendants. It is

apparent that he undertook to act as such, and the plaintiff relied upon him to do so. And he did so act, and gave notice, and all the notice necessary to enable the defendants seasonably to look after their rights, and to ascertain their duty and obligations, in the premises. He was not a stranger to the defendants. They could well rely upon the truth and accuracy of the statements contained in his letter. Nor was it necessary that he should state, in his letter to them, that he wrote at the request of the plaintiff. They could well understand this, and, without doubt, did so understand it. In their communication by W. Wilcox, secretary, of the 20th of May, 1858, to the plaintiff, they place their refusal to allow his claim upon the ground that " the loss he sustained was grossly careless or fraudulent," and not upon the ground that there was any deficiency in the notice of loss.

This is the *issue* they have evinced a willingness to meet, and we can see no good and sufficient reason in law why they should not be required to meet it.

*Exceptions sustained,* —

*Nonsuit set aside, and*

*New trial granted.*

TENNEY, C. J., and RICE, CUTTING, MAY, and DAVIS, JJ., concurred.