Otis Corbett, Respondent, *v.* The Spring Garden Insurance Company, Appellant.

*Fire insurance — term " actual total loss" defined — evidence.*

The term "actual total loss," as applicable to a building insured against fire, means not that its materials were utterly destroyed by fire, but that the building, though part of it remains standing, has lost its identity and specific character as a building and instead has become a broken mass, or cannot longer properly be designated as a building.

If a building ceases, by reason of a fire, to be such, thereby losing its identity and character as a building, the whole sum insured is due, although the materials may not have been absolutely destroyed.

Upon the trial of an action brought to recover upon a policy of fire insurance which insured the plaintiff against loss or damage by fire on his lease of a building, it appeared that all that was left of the building consisted of the foundation and four standing walls, the walls being more or less injured. The policy of insurance provided "it is a condition of this insurance that, in case of such destruction by fire of the above-named premises, that the lease held by the assured shall be by its terms and in fact canceled, this company shall be liable to pay an amount not exceeding the sum hereby insured."

The lease provided that, in case of the total destruction of the building by fire, the rent should be paid up to the time of such destruction and the lease should come to an end.

*Held,* that the court did not err in refusing to determine as a matter of law that there was no total destruction of the building;

That there was sufficient evidence to go to the jury upon the question as to whether the building had lost its identity and specific character as a building; that if it had, then there was a total destruction within the intent of the parties and the policy, although there was no evidence to show that there was a total destruction of the component parts and material that made up the building;

That the answer to a question put by the defendant's counsel, whether the insured "building was totally destroyed, as understood in building," was properly excluded as calling for a conclusion.

Upon the trial of the action the court refused to charge, as requested, that there was not sufficient evidence as to the value of the plaintiff's lease, as there was no evidence given of the estimated cost of repairs which the plaintiff expressly covenanted to make during his term, or of the annual water charges which he also agreed to pay, and that the jury could not find a verdict for substantial damages against the defendant.

By the terms of the lease the plaintiff was only obliged to make such repairs as he might deem necessary, and the evidence showed that the building was in good, tenantable condition at the time of the fire.

*Held,* that it would be the purest speculation and conjecture to estimate what might be the possible or even probable repairs that the plaintiff might think necessary to make in the future, and that the request was properly refused.

APPEAL by the defendant, The Spring Garden Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of November, 1894, upon the verdict of a jury, rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 27th day of November, 1894, denying the defendant's motion for a new trial made upon the minutes.

This is an action upon a policy insuring the plaintiff against loss and damage by fire on his lease of a building. It provided as follows : "It is a condition of this insurance that in case of such destruction by fire of the above-named premises that the lease held by the assured shall be by its terms and in fact canceled, this company shall be liable to pay an amount not exceeding the sum hereby insured."

The lease provided : "And it is further agreed between the parties of these presents, that in case the building or buildings erected on these premises hereby leased shall be partially damaged by fire, the same shall be repaired as speedily as possible at the expense of the said party of the first part ; that in case the damages shall be so extensive as to render the building untenantable, the rent shall cease until such time as the building shall be put in complete repair ; but in case of the total destruction of the premises by fire or otherwise, the rent shall be paid up to the time of such destruction and then and from thenceforth this lease shall cease and come to an end."

The building was six stories in height in front, and five in the rear, with an iron front, and side and rear walls of brick. It was occupied by plaintiff as a furniture store and warehouse. There was some decoration on the walls and ceiling of the first and second floors where furniture was exhibited, and above that the brick walls were tinted. The plaintiff testified : "It was used for warerooms up to the fifth and sixth stories, where we had our upholstery department and furnishing rooms ; otherwise it was entirely open ; there was no divisions."

On November 23, 1892, while the above lease and policy of insurance were in operation, a fire occurred, which caused damage. The roof was entirely gone, the debris therefrom having fallen right down to the foundations ; the front wall, constructed of iron, was

somewhat heated, and "that would burn off the bolts and whatever would attach the iron together;" the ornamental top and cornice were taken down by the firemen. The connecting arches on the fifth and sixth stories were badly damaged. The woodwork, sashes and glass were gone throughout. The east and west walls both had very large openings in them in the upper parts, large enough, as described by one of the witnesses, "to drive a horse and wagon through." The bricks were badly burned and blackened; the mortar was out in a good many places, and there were many loose bricks, and the surface of others had been burned, taking the face off so that it exposed the interior of the brick. The rear wall was in a worse condition than the side walls. The lintels and sills were broken and scaled off, and the wall itself out of plumb. The entire interior of the building, which consisted as stated of six floors, was gone down to the cellar, and there is no question but that the interior of the building was wholly destroyed.

Immediately after the fire plaintiff surrendered his lease and demanded his insurance, which was refused upon the ground, mainly, that there was not a total destruction of the premises.

*Michael H. Cardozo* and *Edgar J. Nathan*, for the appellant.

*Francis D. Dowley*, for the respondent.

O'BRIEN, J.:

Upon the trial the plaintiff insisted that the building, as a building, had ceased to exist by reason of the fire, and that in consequence the insurance company was liable. On the other hand, the defendant contended that because the building was worth a large sum, and a considerably smaller sum was expended in restoration, it was not liable, because there was not a total destruction. And again, upon this appeal, the defendant insists that the contract of insurance was enforcible only in the event of the "total destruction" of the premises, and that upon the evidence no total destruction within the meaning of the policy was shown; that the only destruction was to the roof and the interior woodwork; that the foundations and the brick walls at the side and rear remained in place, and were in fact used without rebuilding; that the iron front was used, with repairs only at the top; and that as to the lintels and

sills, only about one-half were replaced. In addition to this summary of the extent of the loss, the strongest showing made by defendant was that the building was restored and put in complete repair at a cost of about one-third of the sound value of the building at the time of the fire.

If this last proposition had been so conclusively established as to make it a question of law, it would be difficult to evade the conclusion that the weight of evidence was against the verdict, which, in effect, found that there was a total destruction of the building. But while there can be no question as to what it cost to repair, because the repairs were made and the money paid, there is room for different inferences as to what was the sound value of the building prior to the fire.

Three of the four witnesses examined on the part of the defendant did not see the building until after the fire, and the fourth testified that he did not estimate the total value of the building before the fire. And as to their knowledge of the value of the material destroyed, their testimony in this respect was to some extent weakened, upon cross-examination, by the fact that, as to some of these witnesses, they were not speaking of their own knowledge, but based their estimate upon information received from sub-contractors and iron men. And against the estimates thus furnished as to the sound value of the building before the fire as compared with what it cost to restore it, we have other witnesses for the defendant, who furnish us a statement of the injury done to the building. They stated that it was necessary to put on a new roof, to remove the whole interior of the building with hardly an exception; that the reconstruction began at the ground and ran up to the roof. The evidence, therefore, proved that all that was left consisted of the foundation and four standing walls, the latter being more or less injured, according to the version of all the witnesses.

Upon the defendant's motion to dismiss the complaint, we think the court correctly ruled in denying it; but on the case as it stood when all the evidence was in, upon the defendant's motion to direct a verdict, a more serious question was presented. As the evidence then stood, was there presented a question of law or one of fact?

The appellant insists that the evidence was not open to debatable presumptions or doubtful inferences; that the plaintiff had not

made out a case for the enforcement of his contract, and the court should have held, as matter of law, that there was no total destruction; that all that was shown was untenantability, and that there was no warrant for submitting the question of total destruction as one of fact, under the circumstances of this case, to the jury. On the other hand, the plaintiff insists that it was a question of fact upon the evidence as to whether the building as a building had ceased to exist by reason of the fire; that while the standing walls or a structure remained, this is not a building in the ordinary acceptation of that term; that within the intent of the lease and of the policy, when there was a destruction, not of the structure, but of the building as a building, then the loss was one covered by the policy.

Actual total loss " as applicable to a building means not that its materials were utterly destroyed, but that the building, though part of it remains standing, has lost its identity and specific character as a building, and instead has become a broken mass, or cannot longer properly be designated as a building. Absolute extinction is not meant. ' Wholly destroyed' may be an equivalent expression." (Anderson's Law Dict. 639.)

" A total loss does not mean an absolute extinction, but only a destruction of a thing in the character in which it is insured. If a building ceases by fire to be such, losing its identity and character as a building, the whole sum insured is due, although the materials may not have been absolutely destroyed." (May on Ins. [3d ed.] § 421a.)

"A burned building is a total loss when it ceases for all practical purposes to be a building, though some of its component elements remain." (Biddle on Ins. § 1375.)

While we are referred to no decision of our Court of Appeals, we have by way of illustration and argument from other States, the case of Williams v. Hartford Fire Ins. Co. (54 Cal. 450), and Huck v. Globe Ins. Co. (127 Mass. 306), in the former of which the court approved a charge to the jury which was in the following words:

"A total loss does not mean an absolute extinction. The question is not whether all the parts and materials composing the building are absolutely or physically destroyed, but whether, after the fire, the thing insured still exists as a building. Although you may find

the fact that after the fire a large portion of the four walls were left standing, and some of the iron-work still attached thereto, still, if you find that the fact is that the building has lost its identity and specific character as a building, you may find that the property was totally destroyed within the meaning of the policy." And in the latter case (*Huck* v. *Globe Ins. Co.*) Gray, Ch. J., says: "Of the building forming the eastern half of the block, the roof and the whole interior, with all the floors and divisions thereof, had fallen, and nothing remained standing but the outer walls and the elevator, constituting a mere shell or ruin and not a standing building in any proper sense."

While it will be conceded that after the fire there was left a structure, the question is whether such structure constituted a building. Upon the evidence we do not think the court erred in refusing to determine this as a question of law. There was sufficient to go to the jury upon the question of whether the building had "lost its identity and specific character as a building." If it had, then there was a total destruction within the meaning and intent of the parties and the policy. It is true there was no evidence to show that there was a total destruction of the component parts and material that made up the building; but there was evidence tending to show a total destruction of the building as a building, and it was this that was the subject-matter of the insurance.

In regard to rulings upon evidence, the defendant, on cross-examination of one of plaintiff's witnesses, asked him if the building was totally destroyed as understood in building. A like question was put to one of defendant's witnesses. The objection to these, calling as they did for a conclusion, was properly sustained.

The only other question arises upon assigned errors in the charge of the court to the jury. Defendant requested the court to charge that "There is not sufficient evidence as to the value of plaintiff's lease, as there is no evidence of the estimated cost of repairs which the plaintiff expressly covenanted to make during his term, or of the annual water charges which he also agreed to pay, and the jury cannot find a verdict for substantial damages against the defendant." This was asked also in another form, whereby the court was requested to charge that "From the amount which the plaintiff might save annually in rent under his lease, must be deducted the

payments which the plaintiff would be required to make under his lease, and there is no proof as to what such payments would be."

By the terms of the lease the plaintiff was only obliged to make such repairs as he might deem necessary, and the evidence showing that the building was in good tenantable condition at the time of the fire, it would be the purest speculation and conjecture to estimate upon what might be the possible or even probable repairs that the plaintiff might think necessary to make in the future.

It is true that in addition to this the lease required the plaintiff to pay the water rates imposed upon the premises, and the amount of these should have been given. But considering the uses to which the premises were put, we have some knowledge, as the jury undoubtedly possessed, of what the charges for water rates on such premises would be; and the only evidence as to the value of the lease being that offered by the plaintiff, from which it could be inferred that the unexpired portion of the lease was worth over $30,000, upon which there was an insurance of but $20,000, the failure to present for consideration the amount of water taxes as a proper deduction in estimating the value of the lease cannot have resulted in any injury to the defendant, and being such a small matter it should not be available to reverse the judgment if otherwise right. *De minimis non curat lex.*

Upon the main question, as to whether there was sufficient evidence to go to the jury upon the question of total destruction, we think that the learned trial judge was right in submitting it to the jury, and their verdict upon the facts should not be disturbed.

Judgment and order accordingly affirmed, with costs.

Van Brunt, P. J., and Parker, J., concurred.

Judgment and order affirmed, with costs.