LINDNER, Respondent, vs. ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant.

*May 25 — June 19, 1896.*

*Insurance against fire: Evidence: Statement volunteered by witness: Waiver of objection: Pleadings, though withdrawn, admissible: Form of special verdict: Total loss: Proof of ownership.*

1. A party cannot allege as error the admission of a statement volunteered by his own witness on cross-examination and not responsive to any question, if there was no motion to have it stricken out.

2. In an action on an insurance policy, allegations of the answer charging plaintiff with having purposely burned the property, although withdrawn by leave of the court before the commencement of the trial, were admissible when introduced by plaintiff to

corroborate his evidence tending to show that defendant had denied all liability and thereby waived the furnishing of proofs of loss; and the fact that the answer was not verified did not affect their admissibility.

3. A refusal to require the jury in their special verdict to find separately the value of several groups of items insured for separate amounts cannot be held error in the absence of an affirmative showing that defendant was prejudiced thereby.

4. A building is wholly destroyed by fire, so that the loss is total, if its identity as a building is destroyed, although some of the materials remain in a more or less injured condition.

5. In an action on an insurance policy, evidence that at the time of the loss plaintiff was in the possession of all the insured property, which was described in the policy as *his* property, is sufficient evidence, *prima facie,* of his ownership to entitle him to recover.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This action was upon an insurance policy issued by the defendant company to the plaintiff upon his buildings for $1,675, and for $1,050 on personal property,— in all $2,725. The loss occurred on the 2d and 4th days of September, 1893, and it was claimed that it amounted to $3,425. It was alleged in the complaint that the fire did not originate by any act, design, or procurement on the part of the plaintiff, nor on the part of any one having any interest in the property described or in the policy of insurance, nor in consequence of any fraud or evil practice done or suffered by him, and that nothing had been done by or with the privity or consent of the plaintiff to violate the conditions of the policy or to render it void; that the plaintiff had duly fulfilled the conditions of the policy on his part, had given notice to the defendant and furnished it with proofs of loss within sixty days after the fire or fires, and demanded payment of the amount, $2,725; and that the defendant denied all liability under the policy.

The answer admitted the issuing of the policy; that the barn named was burned September 2, 1893, and on the 4th

of the same month the other buildings described in it were damaged by fire,— and denied all the other allegations. It was alleged that after the barn was burned a large amount of smoldering hay and rubbish remained on fire, and, although cautioned to guard against fire from the same to the other buildings, the plaintiff took no care to protect such other property from danger, but purposely and wilfully abstained from so doing, with intent that it might be destroyed by fire from such smoldering hay and rubbish, and wilfully neglected to use any means to save the said property from the fire so threatening it; and that the fire on the 4th of September was caused as the result of such wrongful and wilful neglect of the plaintiff. It was denied that any notice or proofs of loss had been furnished according to the policy. The answer contained allegations to the effect "that the said fires originated by the acts and by the design and procurement of the plaintiff, or that the said fire which occurred on the 4th day of September was directly caused and procured to be set on fire by the said plaintiff for the purpose of destroying said property and defrauding the defendant;" but these allegations were withdrawn, by consent of the court, upon entering upon the trial.

A special verdict was prepared, consisting of several questions, two of which — one as to the ownership of the plaintiff of the property destroyed, and one as to whether the destruction of the building was total — were answered by the court and were not submitted to the jury. Various exceptions were taken to the admission and rejection of evidence, and to the refusal of instructions, and to instructions given, and to the denial of the motion for a new trial, upon which the court changed the answers of the jury to two questions — the third and seventh,— as to the value of property insured, from that found by the jury to that for which it had been insured. The verdict was: (1) The barn, storehouse, dwelling, and bakery, together with personal prop-

erty of the plaintiff, were destroyed by fires on September 2 and 4, 1893. (Answer by the court.) (1b) The said buildings were wholly destroyed by fire. (Answer by court.) (2) The value of the personal property destroyed by fire of September 2, 1893, was $195. (3) The value of the buildings destroyed by the fire of September 2, 1893, was $750 (changed, on motion for a new trial, by the court to $700). (4) The plaintiff, after the fire of September 2, 1893, used all reasonable means to prevent the fire from the burning ruins from spreading to his property adjacent to the site of the fire of September 2, 1893. (5) (No answer required.) (6) The value of the personal property destroyed by the fire of September 4, 1893, was $755.75. (7) The value of the buildings destroyed by fire September 4, 1893, was $800 (changed by the court, on the motion for a new trial, to $975). (8) The plaintiff mailed to the defendant, within sixty days after the fires, proofs of loss under his policy of insurance. (9) The adjuster of the defendant company denied all liability of the defendant under the plaintiff's policy before the expiration of sixty days from the fires.

Such other facts as are material are stated in the opinion. Judgment having been given for the plaintiff, on the verdict, for $2,625.75 and costs, the defendant appealed.

The cause was submitted for the appellant on the brief of *Quarles, Spence & Quarles,* and for the respondent on that of *Fiebing & Killilea* and *J. C. Kerwin.*

PINNEY, J. 1. It is contended that it was error to allow the defendant's adjuster, McClure, on cross-examination, to testify, in answer to a question as to what was said to him about $1,800 when he had an interview at his office with the plaintiff and another in relation to the loss, to the effect that they called on him to talk about getting a settlement; that they were still endeavoring the next day to settle; that he had been out to the premises in the meantime,— and,

without answering the question, he volunteered the statement that he "had not then, or at any time, refused to settle; that he stated to Killilea that he had made two offers conditionally." If the statement thus volunteered by the defendant's witness was improper, the defendant's counsel should have asked to have it stricken out. The answer was not responsive to the question, and the exception does not raise any point available to the defendant as a ground of error.

2. The plaintiff, in making out his case, produced evidence to the effect that about a week after the fire he, with the witness, visited McClure, the adjuster, for the third time in respect to the loss, McClure having said at the second visit that he would not give more than $1,400; that at the third visit McClure said "he would not give anything, that there wasn't any liability under the policy, that the man burned it down." McClure, on the part of the defendant, testified that at none of the interviews, nor at any time, did he say that the company would not pay anything, nor did he deny liability on the part of the company, but he did charge the plaintiff with neglect in allowing the first fire to spread and cause the second. In rebuttal the plaintiff offered and read in evidence, against the defendant's objection, the portions of the answer withdrawn at the commencement of the trial, charging the plaintiff with incendiarism, as stated. We think there was no error in this. The question to which the evidence was directed was whether, by denying liability, the necessity for making and delivering proofs of loss had been waived. The claim in the answer, as applied to this question, was in the nature of an admission or declaration of facts tending to show a waiver, and was admissible as the defendant's claim of defense to the action, and to rebut the evidence of the defendant and corroborate the evidence of the plaintiff's witness. The pleading of a party in the same or any other action is, in general,

competent evidence against him as to any matter of fact material to the action on trial. *Folger v. Boyinton,* 67 Wis. 447. It became necessary to offer these portions of the answer in evidence for the reason that they had ceased to be any part of the existing answer, of which notice could be taken without being thus put in evidence. The defendant could not avoid their effect by withdrawing them from its answer. *Fogg v. Edwards,* 20 Hun, 90; *Strong v. Dwight,* 11 Abb. Pr. (N. S.), 319. There is nothing in the case of *Leavitt v. Cutler,* 37 Wis. 52, to the contrary. That case related only to the use in evidence of charges dishonestly made in a previous answer, in aggravation of damages. The fact that the answer is not verified only renders the declaration less solemn and cogent, but it is still competent to show the claim of defense originally set up. Presumptively, the answer was authorized by the defendant, but it might show the circumstances, and that the allegations were inserted without proper authority.

3. It is said that the court erred in refusing to take the verdict of the jury separately on the value of the several groups of items insured for separate amounts under the policy. There were six groups of items of property destroyed by fire, aggregating about $1,285. It appears that the aggregate amount of insurance on this property was $1,050, and the jury allowed for its loss but $950. It is argued that the jury may have allowed, on some parts of this property insured in groups, a greater sum than it was insured for. No attempt was made to point out that in fact the defendant had been prejudiced by the form of submission, and there is no presumption that it was. Error must be shown affirmatively. It will not be presumed. The form of a special verdict is largely in the discretion of the trial court, and that discretion will not be interfered with, provided the issuable facts in the case are covered. *Pratt v. Peck,* 65 Wis. 463, 472.

4. It is assigned as error that the court refused to direct the jury as to the valuation to be put upon the personal property destroyed in the barn, and refused a specific instruction to the effect that $132 must be deducted from an item of $200 for the horse and wagon that were saved. The court did instruct the jury that they would bear in mind that the horse and wagon were saved, and that they would not take them into consideration, and that the questions as to the value of the personal property destroyed by the fire they would determine from a fair preponderance of the evidence in the case. The question of the value of personal property is largely a matter of opinion, and a fair question for the jury. What the jury allowed for the other items of the entire $200, or what sum they deducted for the horse and wagon, does not appear. We think that the defendant has no ground of complaint. The presumption is that the jury found according to the evidence. The point is made that there was no evidence to show that the hay and grain, valued at $50, were destroyed. There was evidence that they were in the barn, and that the barn was totally destroyed by fire. The request of the defendant that the jury be instructed to deduct $19.25 from the item for flour, on the ground that there were only nine barrels of flour, was not well founded; for the plaintiff, on cross-examination, testified that there were seventeen barrels of flour,— eight of one kind, and nine of another,— giving the value per barrel of each kind.

5. It is insisted that the court erred in instructing the jury that the buildings upon the plaintiff's property insured by the policy were entirely destroyed by fire, but the argument on this point is confined to the matter of the dwelling house, and rests upon the testimony of McClure, the adjuster, to the effect that "the foundation and cellar of the dwelling house were entire, and a great portion of the sills stood upon the top of the stonework;" and another witness

testified that "there was a carpet still remaining on the floor of the room where the feather bed was stored, and such carpet was spoiled with water, but not destroyed." It is argued that a portion of the house, namely, the stone foundation, the foundation sills, and the first floor, were practically intact and uninjured, and had not been reduced to a broken and shapeless mass, but still retained their distinct character, uninjured, as *parts* of the building, and that therefore the question of total destruction was for the jury. This evidence will not prevent the case from being regarded as one of total destruction of the building. It would not be expected that the foundation and cellar would be utterly destroyed. McClure does not say that the foundation was not injured; and only portions of certain combustible parts of the building remained. As was said in *Seyk v. Millers' Nat. Ins. Co.* 74 Wis. 72: "It cannot be doubted that the identity and specific character of the insured buildings were destroyed by the fire, although there was not an absolute extinction of all the parts thereof. This was an entire destruction of the buildings, within the meaning of the statute." The material facts were undisputed, and the court might properly give, as it did, an absolute instruction on the subject. Wood, Fire Ins. § 107; *Harriman v. Queen Ins. Co.* 49 Wis. 71. Another of defendant's witnesses testified that after the fire he made a measurement of the size of the buildings, and that he was able to determine their ground size from what was left; that he found a *part* of the sills and some posts, and where the sills were gone he had no trouble in following their outline. It is clear that each of the buildings had lost its identity as such, so that after the fire neither of them existed as a building. The fact that some of the materials remained, in a more or less injured condition, will not prevent the loss from being total. 2 May, Ins. § 421a. We think that the absolute instruction of the court was warranted by the evidence. There was really no

dispute as to the facts. It follows, therefore, that the court properly increased the amount found in answer to the seventh question to $975, the full amount of the insured value, and in like manner reduced the amount found in answer to the third question to $700, the insured value of the buildings therein referred to.

6. It is urged that the plaintiff's ownership of the insured property was put in issue by the answer, and was not proved, and that the court erred in answering the first question, and in not submitting the question of the plaintiff's ownership to the jury. The evidence is undisputed that at the time of the fire the plaintiff was in possession of all the insured property, and it is described in the policy as *his* property, as "his one-story building," etc.; "his frame barn," etc.; "his one-story frame dwelling occupied as a store-room," etc.; and the like, as to all the buildings. This evidence was sufficient, *prima facie*, to entitle him to recover, and to put the burden of proof on the defendant (*Nichols v. Fayette Mut. F. Ins. Co.* 1 Allen, 63); but it produced no evidence on the subject.

There are no other questions requiring consideration. There does not appear to be any reversible error in the record.

*By the Court.*— The judgment of the superior court is affirmed.