The Liverpool & London & Globe Insurance Company v. L. S. Heckman.

No. 12,389. (67 Pac. 879.)

SYLLABUS BY THE COURT.

1. Pleading and Practice—*Invited Ruling.* The general rule that a party can secure no advantage from an invited ruling applies where the court proceeds with the trial upon the erroneous theory adopted by the parties in their pleadings, when the party complaining, by his pleading, first induced the form of pleading adopted.

2. INSURANCE—*"Total Loss" Defined.* The phrase "total loss," or its equivalent, "wholly destroyed," when applied to insurance, does not mean the complete annihilation or extinction of the property insured. Nor does the term require that the portion of the property remaining after loss shall have no value for any purpose whatever. It means only such destruction or loss of the property as deprives it of the character in which it was insured.

3. ———— *Question for Jury.* Whether a loss by fire of property covered by a policy of insurance is total or only partial is, ordinarily, a question of fact for the jury.

Error from Montgomery district court; A. H. SKIDMORE, judge.   Opinion filed February 8, 1902.   Affirmed.

*Quinton & Quinton,* for plaintiff in error.

*J. B. & W. E. Ziegler,* and *A. B. Clark,* for defendant in error.

The opinion of the court was delivered by

POLLOCK, J.: A contention, more difficult of disposition than the merits of the controversy, arises in this case upon the form of the pleadings. This is an action brought on a policy of insurance. The petition sets forth a copy of the policy and alleges a total loss of the insured property. The policy contains provisions for the ascertainment, by a board of appraisers, of the amount of the loss in a case of disagreement as to the amount, as a condition precedent and prerequisite to the bringing of an action on the policy. These conditions, however, have no force or application in case of total loss occurring in those states having a valued-policy law. Where there is nothing to appraise, a provision for appraisement is nugatory and void. (*O'Keefe v. Insurance Co.,* 140 Mo. 558, 41 S. W. 922; *German Ins. Co. v. Eddy,* 36 Neb. 461, 54 N. W. 856, 19 L. R. A. 707; *Lancashire Ins. Co. v. Bush,* 60

Neb. 116, 82 N. W. 313.)   This state has a valued-policy law. (Gen. Stat. 1901, § 3407).

The petition averring a total loss, it was not incumbent upon plaintiff to allege or show any compliance with the conditions of the policy pleaded providing for an appraisement of the amount of the loss.   Nor was it necessary to plead or show an excuse for non-compliance.   These conditions might be wholly ignored.   But, under such pleading, the proof must conform to and sustain the averment of total loss or the terms of the contract pleaded will defeat a recovery.   A sufficient answer to such a pleading is a denial of total loss.   The provisions for appraisement are wholly immaterial.

The defendant in this case first answered by a qualified general denial, admitting the making of the policy as pleaded, and loss thereunder, but averring such loss to be partial, not total, and set forth at length, as a further special defense, the provisions contained in the policy for appraisement and the stipulation prohibiting the bringing of an action thereon until the amount of loss had been ascertained by appraisers ; a demand for appraisement by the company ; a compliance therewith by plaintiff; the appointment of an appraiser by the plaintiff and by the company ; the entering upon an appraisement ; that no award of appraisers had been made, and, as a consequence, the action was prematurely brought.   All of these allegations of special defense were either surplusage or evidential only of the fact that the loss was partial and not total, and not regarded by the plaintiff to be total, and constituted no defense to the cause of action stated in the petition.

To this answer plaintiff replied by general denial, and, by way of a special reply, denied any disagreement as to the amount of the loss ; admitted the

appointment of appraisers ; the entering upon an appraisement, but averred the abandonment of the appraisement entered upon by the company without fault on the part of plaintiff.  To this special reply defendant filed a general demurrer, which was overruled. Upon the trial, plaintiff offered evidence tending to establish both a total loss under the policy and an abandonment by the company of the appraisement entered upon.  In addition to the general verdict, the jury found specially both a total loss and the abandonment of the appraisement by the company.  Defendant, at the trial, proceeded upon the theory that the loss was not total but partial; that an appraisement was necessary, and that it had been neither waived nor abandoned by the company.  It is now earnestly contended that the reply was a fatal variance or departure from the cause of action stated in the petition, and for this reason the judgment must be reversed.

If the special reply constitutes a departure from the cause of action set forth in the petition, it is well settled that such departure may be taken advantage of by demurrer, and the demurrer to the reply should have been sustained. (*Johnson v. Bank*, 59 Kan. 250, 52 Pac. 860 ; 6 Encycl. Pl. & Pr. 468, and cased cited.) That the overruling of this demurrer and the reception of evidence by the court in support of the allegations of the special reply are not reversible errors will fully appear when carefully considered, for two reasons :  First, no error is assigned by counsel upon the overruling of the demurrer ;  second, the ground upon which this pleading, against which the demurrer was lodged and under which testimony was admitted by the trial court, is defective is not because of a departure from the original cause of action set forth in the petition, nor for the reason alleged in the demurrer,

that it is not responsive and does not state facts suffi-
cient to constitute a defense to the allegations of the
special answer.    It is directly responsive and a good
plea of confession and avoidance of the special matter
pleaded in the answer ; but it is defective because the
allegations of the answer to which the special reply
was directed constitute a false issue, foreign to the
real controversy in the case as made by the petition,
and for this reason any reply thereto would be suffi-
cient.    As this false issue was raised and the special
reply called forth by the defective pleading of defend-
ant, the rulings of the trial court in the reception of
vidence in support of its allegations, if erroneous,
are not available to defendant as error.    The theory
upon which the trial proceeded, if erroneous, was in-
vited by the defendant.    Elliott, in his work on Appel-
late Procedure, section 627, says :

"The general doctrine that a party can secure no
advantage from an invited ruling is tacitly asserted
in the cases which hold that a party who tenders an
immaterial issue cannot successfully complain because
the court tried the case upon the issue he tendered.
The common-law system of pleading recognized and
enforced a rule, which, in effect, was the same as that
which we have here regarded as the rule interdicting
parties from availing themselves of rulings produced
by their own act.    Although the rule of the common
law was differently designated, it was in all essential
particulars the rule we have been discussing, for it
denied to parties benefit from erroneous rulings upon
the pleadings brought about by their invitation.    The
rule of the common law to which we refer is that
which denied the party who committed the first fault
in pleading the right to complain that his adversary
followed in the erroneous direction marked out by
him."

In *O'Neal v. Wade*, 3 Ind. 410, it was held :

"The party, who by his pleading has tendered an

immaterial issue, cannot have the judgment reversed because the case was tried on that issue, and the judgment was, therefore, not decisive of the merits." (*White v. Clay's Ex'ors*, 7 Leigh [Va.] 68.)

If the trial court, therefore, proceeded upon the theory that both the question of a total loss, as alleged in the petition, and the question of abandonment by the company of the appraisement entered upon in compliance with the demand of the company, as alleged in the special reply to the answer, were open to investigation, it must be held that such theory was adopted from the form of the pleadings, and the form of the pleadings being brought about by the special answer of the defendant, it is, therefore, not ground for reversible error.

Again, it is contended by counsel for plaintiff in error that, as shown by the evidence, the loss was partial, not total; therefore the ascertainment of the amount of such loss by appraisers in accordance with the conditions of the policy must precede the bringing of an action on the policy; that the findings by the jury that the company abandoned the appraisement entered upon without fault of plaintiff are wholly unsupported by the evidence, and the judgment must be reversed. This contention assumes the loss to have been partial, not total, and the underlying inquiry is, Was the loss total, or partial only? Upon this branch of the case the defendant offered the testimony of no witnesses in its behalf, but relied upon admissions made by plaintiff. This testimony is as follows:

"Ques. How many rooms are there, Mr. Heckman, down below not burned? Ans. Eight rooms.

"Q. You say you and Mr. Van Valkenberg went down and figured on it. You mean you figured on the amount of damage done by reason of the fire? A. I believe that is it."

The plaintiff, as a witness in his own behalf, testified as follows:

"Ques. After Mr. Van Valkenberg came, state to the jury what was done by him with reference to the loss. Ans. He came here representing himself as a state agent of the company, and said he would fix it up next morning. He came around next morning, and we went around and figured on the loss, and we could not agree on the figures and he went away.

"Q. What was the effect of the fire upon the building and the additions to it? A. It burned the roof off entirely, all the joist, and a great deal of damage to the first floor, and a great deal of siding clear around the building; burned clear out below the plate, the partition, etc., and one story attached to the building south where the fireman tore the shingles off, damaged that by water, tore the plastering all off, and the lower part of the building is all out of shape caused by the fire.

"Q. What effect did it have upon the building as a building for hotel purposes, if any? A. I could not very well use it for a hotel without a top on it. I might say it was totally destroyed."

G. Minor, a witness for plaintiff, testified as follows:

"Ques. After the fire, were the remains of this building fit for use for any purpose as a building? Ans. It was not."

D. M. Addington testified as follows:

"Ques. Well, Mr. Addington, state what was burned. Ans. The whole entire top of the building was burned off and the siding was burned off, part of them half way down the first story. The roof was entirely gone, and the second floor is damaged on account of some of the joist being burned out. The stairs are burned out. The building is a complete wreck.

"Q. Well, you may state whether the building, as a building, was totally destroyed. A. Well, as a building it is totally destroyed.

"Q. You may state what was the condition of the inside of the building when you first examined it. A. Well, it was in a bad condition. It is just a ruin, that is all. All burned out on the inside."

Upon this and other testimony the jury found specially as follows:

"1. Was the two-story hotel building of plaintiff wholly destroyed by the fire of October 13, 1897? Ans. Yes.

"2. What is the amount of loss and damage to said building by reason of said fire? A. $2200."

Whether the building covered by the policy, the foundation of this action, was or was not rendered by the fire a "total loss" or "wholly destroyed," was, in this case, a question of fact for the jury. (*Corbett v. Spring Garden Ins. Co.*, 85 Hun, 250, 32 N. Y. Supp. 1059; *Ampleman v. Citizens' Ins. Co.*, 35 Mo. App. 308; *Ampleman v. The North British & M. Ins. Co.*, 35 id. 317.)

The phrase "total loss," or its equivalent, "wholly destroyed," as used when applied to the subject of insurance, does not contemplate the entire annihilation or extinction of the property insured. Nor does it require that any portion of the property remaining after loss shall have no value for any purpose whatever, but it means only destruction of the property insured to such extent as to deprive it of the character in which it was insured. Although some portion of the building may remain after the fire, yet if such portion cannot be reasonably used to advantage in the reconstruction of the building, or will not, for some purpose, bring more money than sufficient to remove the ruins, such building is, in contemplation of the law, a "total loss" or "wholly destroyed." (2 May, Ins. [4th ed.] § 421a; *Lindner v. St. Paul*

*Fire & Marine Ins. Co.*, 93 Wis. 526, 67 N. W. 1125; *Royal Ins. Co. v. McIntyre*, 90 Tex. 170, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797 and note; *Corbett v. Spring Garden Ins. Co.*, 155 N. Y. 389, 50 N. E. 282, 41 L. R. A. 318; *Williams v. Hartford Ins. Co.*, 54 Cal. 442, 35 Am. Rep. 77; *Havens v. Fire Insurance Co.*, 123 Mo. 403, 27 S. W. 718, 26 L. R. A. 107, 45 Am. St. Rep. 570.)

The question of total loss having been submitted to and specially found by the jury, we are not at liberty to say that such finding is wholly unsupported by evidence found in the record. In this view of the case, the question whether an appraisement of the amount of the loss was had or not becomes wholly immaterial. The remaining assignments of error, being applicable to that branch of the case, also become unimportant.

It follows that the judgment must be affirmed.

DOSTER, C.J., SMITH, J., concurring.