No. 31,398

OWEN OBERST, *Appellee*, v. THE FARMERS UNION MUTUAL INSURANCE COMPANY OF KANSAS, *Appellant*.

(28 P. 2d 779.)

Opinion filed January 27, 1934.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger* and *E. S. Hampton*, all of Salina, for the appellant.

*John Madden, John Madden, Jr.,* and *L. C. Gabbert*, all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on a policy of fire insurance on a farmhouse.

The case is part of the aftermath of an appalling tragedy which occurred in Butler county some years ago, the repercussions of which have been chronicled in our reports. (*State v. Oberst*, 127 Kan. 412, 273 Pac. 490; *In re Oberst*, 133 Kan. 364, 299 Pac. 959; *Oberst v. Mooney*, 135 Kan. 433, 10 P. 2d 836.)

Briefly the facts of present concern were these: On and for some years prior to April 20, 1928, one W. F. Oberst, his wife and family consisting of six children (including this plaintiff) resided on a farm which he owned free of encumbrance. On that date he held a fire insurance policy issued by defendant for $1,500 covering his farmhouse (and separately covering other farm buildings not in-

volved) which had been issued on October 18, 1926, and on which the premium had been paid for a term of five years.

On the evening of April 20, 1928, W. F. Oberst and his wife and five of his children met their deaths and their bodies were incinerated in their farm home which at the same time was burned to the ground.

On May 5, 1928, this plaintiff, then seventeen years and some months old and the only survivor and heir at law, was arrested for the murder of his father and mother and five brothers and sisters; and, on June 13, 1928, pursuant to a plea of guilty, he was incarcerated in the penitentiary under seven sentences of life imprisonment.

On the day following the fire, the defendant's local soliciting agent wrote to his company as follows:

"BURNS, KAN., Apr. 21, 1928.

"Farmers Union Ins. Co., Salina, Kan.:

"On April 20, at about 8 o'clock in the evening, William Oberst dwelling house burned; a complete loss. It was insured in your company. Mr. Oberst, wife and five children were burned to death in the building; cause unknown.

"Resp. Yours,      E. E. LISTER."

On April 25, 1928, Fred Oberst, brother of W. F. Oberst, was appointed and qualified as administrator of his dead brother's estate. He employed an attorney, who on July 2, 1928, wrote to defendant as follows:

"I . . . wish to arrange with you for payment of the policy of insurance on the house of W. F. Oberst farm, which was totally destroyed by fire April 20. Please send the blanks for proof of loss and any instructions which you desire followed in connection with the same."

On August 13, 1928, proof of loss was submitted to defendant by the administrator on a blank form furnished by defendant, in which was a statement touching the origin of the fire, as follows:

"Said to have been caused by son of insured setting fire to the property."

Defendant acknowledged receipt of this proof of loss and in the same letter referred to the sixty days' time given defendant by law to settle or reject the claims. Following that interval, action was begun by the administrator to recover on this policy. Defendant demurred on the ground that the administrator had no right to maintain the action. Thereafter the cause lay dormant until November 14, 1932, when the demurrer was sustained and the action dismissed.

On January 12, 1929, the judgment and sentence of the district

court imposed on plaintiff for the murder of his father and the similar judgments for the six other homicides were reversed; and on February 23, 1929, by special mandate of this court, plaintiff was delivered by the warden of the penitentiary to the sheriff of Butler county, and thereafter confined to jail for the space of two years, during which time he was subjected to three inconclusive trials for the murder of his father, and until he was released on bond by order of this court pending its review of an order of the district court transferring the cause for trial to another jurisdiction. (*In re Oberst,* supra.) On October 10, 1931, all criminal proceedings against plaintiff were nollied, and he was discharged. Meantime he had attained his majority, and on October 6, 1931, he wrote to defendant as follows:

"Wichita, Kan., Oct. 6, 1931.

"The Farmers Union Mutual Insurance Company of Kansas, Salina, Kansas:

"Gentlemen—This is to notify you that the home of W. F. Oberst, covered by your policy A-9354, was totally destroyed by fire on the 20th of April, 1928.

"This is the same fire for which Fred Oberst, administrator of the estate of W. F. Oberst, brought suit in Butler county, Kansas, and is now pending, for the recovery under your policy.

"Owen Oberst, the undersigned, and sole and only heir of the insured, attained his majority September 11, 1931, and makes this notice within the thirty days after his disability was removed.

"If proof of loss is required by your company, please send your form of proof of loss and I shall make such statement as you may require covering the facts under my oath and return the same to you.

"Witness my hand the day and date first above written.    Owen Oberst."

In response to this letter the defendant advised plaintiff that the subject matter of the correspondence was in the hands of its lawyers. Hence this lawsuit.

Plaintiff's petition set up the pertinent facts and attached a partial copy of the insurance policy on which the defendant's by-laws were printed.

Defendant answered with a general denial, but admitted the execution of a policy of insurance on the property in question, and alleged that no proof of loss was made within the time and manner provided by the by-laws, and further alleged that the property "was intentionally burned by the plaintiff."

Plaintiff's reply pleaded the facts which we have narrated above in our statement of the case.

The cause was tried before a jury. The evidence developed no serious dispute of fact. Defendant offered no evidence to support

its plea that plaintiff had burned the building. Plaintiff took the initiative in adducing evidence that his confessions of several years before touching the burning of the house (and the murdering of members of his family) were given under duress and untrue. However, since defendant abandoned that issue after tendering it, the defense of alleged arson went out of this case.

The jury returned a verdict for plaintiff, and judgment was entered accordingly.

Defendant appeals, directing attention to certain of its by-laws which were a part of the terms of the insurance contract, and which it still relies on as a bar to a recovery. These, in part, read:

"ARTICLE 16—*Notice and Proof of Loss*

"If loss occur the insured shall give immediate notice of the loss in writing to the secretary and failure to give such notice within thirty days shall void the claim; . . . and within sixty days after the loss unless such time is extended in writing to the company, shall render a statement to this company signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; . . . and changes of title, . . . of said property since the issuing of the policy . . .

"ARTICLE 18—*Avoidance of Policy*

". . . This entire policy, unless otherwise provided by agreement indorsed thereon or added thereto by the secretary, shall be void if the insured . . . shall fail to make proof of loss as provided by these by-laws."

Neither in defendant's answer nor in its brief is any point made of the fact that notice of the fire was not given by the insured (whose body was burned in the holocaust) nor by plaintiff as successor in interest. Notice was promptly given to defendant by its own local representative, who, however, was not charged with such a duty. On the efficacy of such a notice, see *Germania Ins. Co. v. Curran*, 8 Kan. 9; *Stimpson v. Monmouth Ins. Co.*, 47 Me. 379; *Mellen v. U. S. Health & Accident Ins. Co.*, 83 Vt. 242.

But defendant emphasizes the point that the requisite proofs of loss were not given within sixty days after the fire, and that in consequence liability was not perfected against it. On this point the trial court gave an instruction to the jury complained of, which reads:

"You are further instructed that if you find that the property was totally destroyed by fire and notice of same was given further proof was not required, and if otherwise entitled to recover, the plaintiff would be entitled to recover the full amount of the policy on the house, to wit, $1,500."

Defendant cites several of the earlier cases of this court like *Insurance Co. v. Ross*, 48 Kan. 228, 29 Pac. 469, in which it was held that a failure of the insured to supply the proofs of loss within the time required by the terms of the policy, except where they were waived, would render plaintiff's claim subject to demurrer or nonsuit. Such decisions, however, were rendered prior to the enactment of the valued-policy law. (Laws 1897, ch. 142; R. S. 40-413; R. S. 1931 Supp. 40-905.) That statute provides:

"Whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages, and the payment of money as a premium for insurance shall be *prima facie* evidence that the party paying such insurance is the owner of the property insured: *Provided,* That any insurance company may set up fraud in obtaining the policy as a defense to a suit thereon." (R. S. 40-413.)

In this case the insured property was wholly destroyed, and while the valued-policy statute quite properly recognizes the insurer's right to invoke a defense of fraud, the prevailing construction of such statutes is that where the property is wholly destroyed the insured has a cause of action based on what is in effect a liquidated demand against the insurer, and that proof of loss becomes immaterial and the failure of insured to supply it will not defeat a recovery on the policy. (*Insurance Co. v. Heckman*, 64 Kan. 388, 67 Pac. 879; *Minneapolis F. & M. Mutual Ins. Co. v. Fultz*, 72 Ark. 365; *Roe v. Dwelling House Ins. Co.*, 149 Pa. St. 94; *Am. Cent. Ins. Co. v. Terry*, [Tex. Com. of Appeals, 1930] 26 S. W. 2d 162.) Recent cases to the same effect are *Cara v. Newark Fire Ins. Co.*, (Pa. St. May 22, 1933), 167 Atl. 356; *Security Ins. Co. v. Vines*, (Tex. Civ. App.) 48 S. W. 2d 1017; 26 C. J. 378. In *McCollum v. Fire Ins. Co.*, 67 Mo. App. 76, the same rule was recognized although the court held it inapplicable in that case. In the latest Pennsylvania case above cited the supreme court held that the rule was one of general application where the insured property was totally destroyed and not limited to cases governed by the valued-policy act.

Counsel for defendant cite cases holding that the valued-policy act does not altogether dispense with the requirement of proof of loss, as where questions of ownership or of the *bona fides* of the

loss may be involved. Here, however, there was no question of plaintiff's ownership, and while the *bona fides* of the loss was raised by defendant, plaintiff's evidence disposed of that point to the satisfaction of the jury, or at least to the satisfaction of the defendant as it offered no testimony to controvert it, and contented itself with its demurrer to plaintiff's evidence.

In view of the conclusion we have just reached, it becomes unnecessary to determine whether plaintiff's imprisonment during his minority would have constituted such a disability under the code (R. S. 60-305) as would have excused his long delay in offering proofs of loss. But see Vance on Insurance 503, 504 and citations.

The record contains no error and the judgment is affirmed.

BURCH and HUTCHISON, JJ., not sitting.