SEYK and others, Respondents, vs. THE MILLERS' NATIONAL INSURANCE COMPANY, Appellant.

*January 12 — April 25, 1889.*

INSURANCE AGAINST FIRE. *(1) Failure to pay assessment after loss. (2, 3) Total destruction of building: Measure of damages: Contract made in another state. (4) Submission to arbitrators: Waiver.*

1. The by-laws of a mutual insurance company provided that if a policy-holder should neglect for thirty days after notice thereof to pay any assessment his policy should be null and void until such payment was made. *Held,* that the nonpayment of an assessment falling due after a loss did not defeat an action upon the policy, even though the amount of the loss was not actually due to the insured when the assessment became payable.
2. Sec. 1943, R. S. (providing that the amount of the insurance written in a policy insuring real property shall, if such property be wholly destroyed, "be taken conclusively to be the true value of the property when insured, and the true amount of loss and measure of damages when destroyed"), applies to all insurance contracts, no matter where made, affecting real property in this state.
3. All the combustible materials in a building were destroyed, and although portions of the brick walls were left standing yet they were useless as walls, and many, perhaps most, of the bricks therein were spoiled by the heat. *Held,* that the building was "wholly destroyed," within the meaning of sec. 1943, R. S.
4. The submission to arbitrators, pursuant to a stipulation in the policy, of the question of the amount of loss, and the award of a sum less than the amount recoverable under sec. 1943, R. S., do not constitute a waiver of the benefit of the statute, or limit the liability of the insurer to the sum awarded.

APPEAL from the Circuit Court for *Kewaunee* County.

The defendant company is a corporation organized under the laws of Illinois and doing business as a mutual insurance company in the city of Chicago. This action is upon a policy of insurance issued by it to the plaintiffs, dated September 5, 1885, in and by which it insured the plaintiffs for five years against the loss by fire of or damage to cer-

tain real and personal property in the city of Kewaunee, Wis., to the amount of $10,000. The insured property is described in the policy in four subdivisions, and the amount of insurance thereon is specified therein as follows: (1) Two flouring-mill buildings,— one frame and the other brick,— and a brick boiler and engine house, all known as the Northwestern Mills, insured in the sum of $1,785; (2) fixed and movable machinery, tools, and fixtures in such flouring-mill buildings, in the sum of $4,875; (3) engine, boiler, tools, machinery, and implements in the engine and boiler house, for $840; and (4) grain, flour, feed, etc., in such buildings, for $2,500.

On August 27, 1887, the insured property, or at least most of it, was destroyed by fire. Due proofs of such loss were afterwards furnished to the defendant as required by the policy.

There was concurrent insurance on the property, and the proportion of loss to be paid by the defendant (if liable on the policy) on account of the burning of the insured property, except the buildings first above described, was agreed upon by the parties, and is not here in controversy. The sums thus agreed upon are, on the property described in subdivision 2, $4,875; in subdivision 3, $395; and in subdivision 4, $1,345.72.

Such proportion on the buildings (subdivision 1), if the policy is held subject to sec. 1943, R. S., is $1,785, the amount of the insurance written therein; but if it is not a valued policy under that statute the proportion of the loss on such buildings to be paid by the defendant (if otherwise liable) is $1,102.13. This sum was ascertained by an award of arbitrators, determining the amount of the loss on such buildings, made pursuant to a submission of the matter by the parties to such arbitrators.

Other material facts in the case are stated in the opinion. The jury found specially that the loss by the burning of

such buildings exceeded all the insurance thereon, and that the loss was total. The court held that the policy was governed by the above statute, and allowed the plaintiffs $1,785 on account of the loss of the buildings. Judgment was entered for the plaintiffs June 11, 1888, for $8,490.82 damages, and for costs. Soon after, and before this appeal was taken, the plaintiffs duly entered a remission of $116.56 of that amount, thus reducing the damages to $8,374.26. The defendant appeals from the judgment.

For the appellant there were briefs by *Ellis, Greene & Merrill*, and oral argument by *E. H. Ellis* and *M. H. Beach*.

For the respondents there was a brief by *John Watawa*, attorney, and *Turner & Timlin*, of counsel, and oral argument by *W. H. Timlin*.

The following opinion was filed January 29, 1889:.

LYON, J. I. The first question to be determined is whether the defendant company is liable at all on the policy in suit. This question arises out of the following facts: The company does business on the mutual plan, and as a part consideration for the policy the plaintiffs executed to it its premium or deposit note for $2,750 as a basis for assessments to pay losses. The by-laws of the company provide that if a policy-holder neglects, for thirty days after notice thereof, to pay any assessment on his note, his policy " shall be null and void and of no effect until such payment is made." The plaintiffs were notified September 5, 1887 (which was after the insured property had been burned), that an assessment of $192.50 had theretofore been duly made upon their deposit note. They have never paid this assessment, and it is claimed that the policy thereby became forfeited, or, at least, that no action can be maintained upon it until the assessment is paid.

An examination of the language of the above by-law

will show that its scope and effect is misapprehended, and that the nonpayment of the assessment falling due after the loss does not, by its terms, result in defeating an action upon the policy. The provision in the policy that it shall be null and void in the contingency named necessarily means that the contract of indemnity written therein shall thus become null and void. But, before the delinquent assessment became payable, such contract of indemnity ceased to exist, and there was nothing upon which the provision could operate. By reason of the destruction of the insured property, the obligation of the insurer to pay the loss became absolute, subject only to the condition that due proofs of loss should be made. Thus the relation of debtor and creditor existed between the parties when the plaintiffs made default in respect to the assessment, and it is immaterial that the amount of loss was not actually due when the assessment became payable. The by-laws do not provide that a default after loss shall forfeit such indebtedness, but only the contract of indemnity, and when the default occurred there was no such contract to be forfeited. But had the by-laws contained the additional provision that a default in the payment of an assessment after the liability of the insurer on the policy had become fixed and absolute should work a forfeiture (which it does not), we should then have the question decided in *Dogge v. Northwestern Nat. Ins. Co.* 49 Wis. 501, and in *Alkan v. New Hampshire Ins. Co.* 53 Wis. 136, wherein it was held that, after liability actually attaches under the policy, the entire relation between the parties is changed from that of insurer and insured to that of debtor and creditor, and clauses in the policy which provide that certain acts or omissions of the insured shall invalidate it are inoperative. See, also, 2 Wood on Ins. p. 758, § 361. We think the rule and reasoning of those cases would be applicable here, did the by-laws of the company contain the pro-

vision above suggested, and we should be compelled to hold the provision void. We conclude, therefore, that there has been no forfeiture of, or suspension of, liability on the policy, and the insurer remains liable thereon for the loss.

Much testimony was introduced or offered on the trial by the plaintiffs to show a waiver of the alleged forfeiture by an agent of the defendant company and the general officers thereof, and on the part of the defendant to show want of authority by such agent and officers to make an effectual waiver thereof. The views above expressed render all such testimony, and all rulings of the court either admitting or rejecting it, entirely immaterial. There are numerous exceptions to such rulings, but they require no further notice.

II. Having determined that the insurer is liable on the policy for the loss caused by the burning of the insured property, we are now to ascertain the extent of such liability. As before stated, the only controversy between the parties is the amount of loss on the buildings described in the first subdivision in the policy.

1. Is the policy in respect to that property governed by sec. 1943, R. S.? It is there provided that "whenever any policy of insurance shall be written to insure any real property, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of loss and measure of damages when destroyed." The defendant company introduced or offered testimony tending, or which might have tended, to show that the contract of insurance was made exclusively in the state of Illinois, and that the laws of that state limit the liability on the policy to the actual loss. Some of this testimony was rejected. The contention of counsel for the company is that if those facts exist — the

defendant being an Illinois corporation, and the loss being payable in that state — the contract is governed by the laws of that state, and hence that sec. 1943 of our statutes does not affect the recovery. The circuit court held otherwise, and we think correctly.

Sec. 1943 affects real estate only, and is general in its terms. It does not except from its operation insurance contracts made elsewhere. It is founded upon what the legislature regarded a sound public policy, and manifestly was intended to apply to all insurance contracts, no matter where made, affecting real property in this state. It is as competent for the legislature to enact such a law as one prescribing the mode of execution and the effect of deeds, leases, or other conveyances of real property situated in this state, no matter where such instruments were executed. Hence, conceding this to be an Illinois contract, still it is governed by sec. 1943, if otherwise within that section. See *Reilly v. Franklin Ins. Co.* 43 Wis. 449; *Thompson v. St. Louis Ins. Co.* 43 Wis. 459; *Bammessel v. Brewers' F. Ins. Co.* 43 Wis. 463; *Thompson v. Citizens' Ins. Co.* 45 Wis. 389.

2. Were the insured buildings wholly destroyed within the meaning of sec. 1943? The evidence is that all the combustible material in the structures was destroyed, and although portions of the brick walls were left standing yet they were useless as walls, and many, perhaps most, of the bricks therein were spoiled by the heat. It cannot be doubted that the identity and specific character of the insured buildings were destroyed by the fire, although there was not an absolute extinction of all the parts thereof. This was an entire destruction of the buildings, within the meaning of the statute. 1 Wood on Ins. sec. 107. The jury were so instructed.

3. The parties submitted the question of the amount of loss on the buildings to arbitrators, pursuant to a stipula-

tion contained in the policy, and the arbitrators awarded the same at a sum which would make the liability of the company $682 less than it would be if the policy is enforced under the statute. It is claimed that the submission is a waiver of the benefits of the statute, and that the defendant's liability is limited by the award. This proposition was negatived by this court in *Thompson v. Citizens' Ins. Co. supra.* In the opinion in that case, after referring to the cases in 43 Wis. above cited, Mr. Justice Orton says: " If a stipulation in the policy of insurance that the loss or damage should be established according to the true and actual marketable value of the property destroyed will not be enforced to lessen the amount of insurance written in the policy, against the rule established by the statute, in a court of law, much less will the award of arbitrators chosen by the parties under another stipulation, lessening such amount, be corrected and enforced in a court of equity."

III. The judgment for damages, after deducting the sum remitted therefrom, is $8,374.26. The items which may properly be included therein are the following: Loss on account of property described in subdivision 1, $1,785; in subdivision 2, $4,875; in subdivision 3, $395; and in subdivision 4, $1,345.72; total, $8,400.72. Deduct unpaid assessment, $192.50, and $4.11 interest thereon from September 5 to December 25, 1887,— in all $196.61. Balance, $8,204.11. Interest thereon at six per cent., from December 25, 1887, to date of judgment, June 11, 1888, $225.88. Total, $8,429.99, due plaintiffs at date of judgment. This is $55.73 in excess of the judgment as entered, less the sum remitted. This computation is on the basis furnished by the agent of the company, and in all respects is most favorable to the company. A computation on strictly legal rules would probably somewhat increase the amount due on the policy. There is an item of $58, salvage, five sixths of which, or $48.33, is chargeable to the plaintiffs on the policy in suit.

It is understood that this sum was deducted from the amount which would otherwise have been due plaintiffs under the fourth subdivision of the policy, and that the $1,345.72 allowed them under that subdivision is the balance of loss after deducting the amount of such salvage. But if this is not so, and the deduction should be from the judgment, still the judgment is not too large.

It is believed that the foregoing propositions include and determine all the errors assigned, either rendering them unimportant or overruling the exceptions.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied April 25, 1889.