NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
v. ROCHESTER GERMAN INSURANCE COMPANY.[1]

December 20, 1901.

Nos. 12,726—(120).

**Fire Insurance—Total Loss.**

Under the standard fire insurance policy, total loss is to be ascertained as of the date of the occurrence, and is determined by the following tests: A building is not a total loss unless it has been so far destroyed by the fire that no substantial part or portion of it above the foundation remains in place capable of being safely utilized in restoring the building to the condition in which it was before the fire. The words "total loss," when applied to a building, mean totally destroyed as a building; that is, that the walls, although some portion of them remain standing, are unsafe to use for the purpose of rebuilding, and would have to be torn down, and a new building erected throughout. There can be no total loss of a building so long as the remnant of the structure left standing above the foundation is reasonably and safely adapted for use (without being taken down) as a basis upon which to restore the building to the condition in which it was immediately before the fire; and whether it is so adapted depends upon the question whether a reasonably prudent owner of a building uninsured, desiring such a structure as the one in question was before the fire, would, in proceeding to restore the building, utilize such standing remnant as such basis. If

---

[1] Reported in 88 N. W. 265.

he would, then the loss is not total.    Rules applied, and *held* error to refuse instructions in substance embodying these principles.

### Same—Property Insured.

A cold storage plant was insured under the following description: "Four-story and basement brick building, with composition roof, and brick engine and boiler house attached, including steam heating and hoisting apparatus, steam, brine, water, gas pipes and fixtures, and all other permanent fixtures, occupied for warehouse purposes." The engine house consisted of a small one-story brick structure attached to the main building, and the whole considered and operated as an entirety. *Held*, conceding the engine house was but slightly damaged by the fire, under the tests above given the question of total loss must be applied to the structure as a whole.

### Wall of Building.

The wall at one end of the building had been bolted to a similar one of an adjoining brick building, thereby making a double wall. *Held* that, as bearing upon the question of total loss, it was proper to show that the double wall remaining was not suitable to be utilized, in place, in restoring both buildings. In such case the insured could not claim the entire benefit of the remaining double wall.

### Evidence.

The evidence did not show conclusively that the loss was total.

Action in the district court for Ramsey county to recover $4,500 and interest upon two policies of fire insurance. The case was tried before Jaggard, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and new trial granted.

*Countryman & Morrison*, for appellant.

*Durment & Moore*, for respondent.

LEWIS, J.

The St. Paul Cold Storage Company insured a certain building in the appellant company, taking out two policies, one for $2,500 and another for $2,000. The property was described as follows:

"Their four-story and basement brick building, with composition roof, and brick engine and boiler house attached, including steam

heating and hoisting apparatus, steam, brine, water, gas pipes and fixtures, and all other permanent fixtures occupied for warehouse purposes, situate numbers 201, 203, 205 Eagle street, St. Paul, Minnesota. The insurable value of the building and addition in first item is hereby stated to be $22,500."

The interest of the insured in these policies was assigned to respondent, and, a fire having occurred, it was claimed by respondent that within the terms of the policy there was a total loss. This appellant denied, claiming the damage did not much exceed $14,000, and demanded a submission of the amount of loss to appraisers, according to the provisions of the policies. Respondent refused to comply with the demand for arbitration, and brought this action to recover the entire amount covered by the policies. Upon the trial the jury rendered a verdict for the full amount of the policies, and from an order denying a motion for judgment notwithstanding the verdict and for a new trial the insurance company appealed.

The principal question in the case is: What is the meaning of the term "total loss," as used in the standard policy? That part of the contract necessary for our consideration reads as follows:

"In case of loss, except in case of total loss on buildings, under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men," etc.

The evidence as to the condition of the building and the amount of the damage was conflicting. One witness produced by respondent testified that, in order to rebuild, the front wall would have to be taken down, three stories of the south wall, and the entire rear walls; that the three stories of the north wall could be left standing; also that the walls which would not have to be taken down were of the value of $2,435, in place, for the purpose of rebuilding. Another of respondent's witnesses testified that the north wall could be used in rebuilding, except twenty-two feet of the top, which would have to be removed; but that the other walls would have to come down in rebuilding, being so much damaged that the cost of repairing them would exceed the cost of new walls. And another witness stated that the north wall would have to

come down entirely, and the northwest corner of the west wall would have to come down to the foundation, but that the south-west corner, for about the height of one story, would be all right. Witnesses called on behalf of appellant testified that, having made a careful examination of the building, the foundation walls, and at least the first and second stories of the brick walls on both sides and ends of the main building, were in good condition, and suitable for rebuilding, with some repairing; that the value of the brick and stone walls, in place, which were safe to be used in rebuilding was about $6,000, exclusive of the brick engine house addition. The city engineer of St. Paul testified that the two top stories of the brick walls ought to be taken down, but that the remaining portion of the walls was all right, in place, for rebuilding, after some inside repairs.

Upon the question of total loss the court instructed the jury as follows:

"The fact that the walls which remain standing have some value, and that portions of them may continue to stand, and be used in rebuilding upon these premises, will not prevent it being a total loss, nor be sufficient to defeat plaintiff's recovery in this action, if the identity and specific character of the building has been destroyed as stated."

The court further charged that it was not necessary that all of the materials of the building should have been consumed by the fire, nor that the walls should have fallen as the result thereof; that it was the building, as such, which was insured, and not the materials; and if, as the result of the fire, the building no longer exists, there remaining only the ruins, so that the structure has lost its identity and specific character as such, then the loss is a total one.

From the evidence it appeared that there was a one-story brick engine house, attached to the main building, which was not materially injured by the fire. In reference to it the court charged the jury as follows:

"This building, together with the engine room attached, and the fixtures that were therein contained, are to be considered as an entirety. And the question before you to be determined, is wheth-

er or not, considering the insured objects as a whole,—as an entirety,—whether or not the loss was partial or total?"

To these instructions exception was taken, and the following requests were submitted by appellant, but refused by the court:

"A building is not a total loss, within the meaning of the policies in this case, unless it has been so far destroyed by the fire that no substantial part or portion of it above ground remains in place capable of being safely utilized in restoring the building to the condition in which it was before the fire." Also: "These words 'total loss,' when applied to a building, mean totally destroyed as a building; that is, that the walls, although some portion of them remain standing, are unsafe for use for the purpose of rebuilding, and would have to be torn down, and a new building erected throughout."

Appellant also requested the court to give the following instruction:

"There can be no total loss of a building so long as the remnant of the structure left standing above ground is reasonably and safely adapted for use (without being taken down) as a basis upon which to restore the building to the condition in which it was immediately before the fire; and whether it is so adapted depends upon the question whether a reasonably prudent owner of the building, uninsured, desiring such a structure as the one in question was before the fire, would, in proceeding to restore the building, utilize such standing remnant as such basis. If he would, then the loss is not total." Also: "If you believe from the evidence that the brick engine and boiler house addition mentioned in these policies was substantially uninjured by the fire, and that it was not thereby rendered unfit to be occupied and used for the purpose of an engine and boiler house in connection with the warehouse mentioned in the policies, then I charge you that there has not been a total loss, and your verdict must be for the defendant."

In the first place, it would be well to determine the nature and extent of the contract embodied in the standard policy, and to state some of the elementary propositions in reference thereto. A contract of insurance is a contract of indemnity. When there are no limitations as to the amount of the loss, and no stipulated value of the property, the insured is to be reimbursed for the actual amount of his loss. In the policy in question the parties stipulated that the value of the building was $22,500; conse-

quently, if the loss occasioned by the fire were total, the stipulated value put an end to any inquiry as to the amount of the loss. The provision was adopted for the purpose of avoiding the uncertainty of determining the value after the fire. For the same purpose a speedy method by means of arbitration is provided for determining the amount of damage in cases where the loss is only partial, and rules are laid down to govern the selection and action of such arbitrators. It is also evident that the insurance in such case is not upon the materials of which the building is composed, but upon the building itself,—in this case, the four-story basement brick building, with engine and boiler house attached, etc.,—and therefore, under this contract, the insured was damaged only to the extent that the building, as such, has been injured, and, if there is any salvage in the remaining material, as such, it was contemplated by the parties that it be not taken into account. We are required to pass upon two questions in connection with this branch of the case: Whether, as a matter of law, under the evidence, the loss was total by reason of the destruction of the building, as such; and, if not conclusive on that point, whether the evidence was conflicting, and should have been submitted to the jury. These questions involve a definition of the expression "total loss," which is under consideration for the first time in this court, and will therefore require a somewhat extended review of the authorities.

The case was submitted to the jury upon the theory that it was immaterial that portions of the walls of the building were left standing and could be utilized, as such, in rebuilding, because upon the evidence it appeared that the identity and specific character of the building had been destroyed. These words, "identity" and "specific character," have been used and applied in many insurance cases, and have given rise to much confusion.

The leading case in this country using those terms with reference to a building is that of Williams v. Hartford, 54 Cal. 442, which being so often cited as a landmark in the judicial history of the question, it should be given particular attention. In that case the court instructed the jury as follows: "A total loss does not mean an absolute extinction. The question is not whether all the

parts and materials composing the building are absolutely or physically destroyed, but whether, after the fire, the thing insured still exists as a building. Although you may find the fact that after the fire a large portion of the four walls was left standing, and some of the ironwork still attached thereto, still if you find that the fact is that the building has lost its identity and specific character as a building, you may find that the property was totally destroyed within the meaning of the policy." But in that case the evidence disclosed that no substantial part of the walls left standing was suitable, as such, for the purpose of rebuilding; and the court, in the instruction, was calling particular attention to the fact that the insurance covered the building as such, and not the materials of which it was composed; and the words "identity" and "specific character" were used with special reference to the facts of the case then before the court. The authorities cited in that opinion are: Insurance Co. v. Fogarty, 19 Wall. 640, 644; Hugg v. Augusta Ins. & B. Co., 7 How. 595; Nave v. Home, 37 Mo. 430; Huck v. Globe, 127 Mass. 306, and Judah v. Randal, 2 Caines Cas. 324.

Insurance Co. v. Fogarty, supra, was a case involving the loss of machinery on board a ship. That part of the machinery recovered was utterly useless as machinery, and was of no value except as old iron, and would cost much more to repair and put it in shape for use than a new machine; upon which state of facts the court held the loss to be total.

In Hugg v. Augusta Ins. & B. Co., supra, there was involved insurance upon a quantity of jerked beef, and, the same having been damaged at sea, the question arose as to whether there was a total or partial loss. The court held that the loss was total, because the beef was destroyed as jerked beef, although the materials composing it had not become extinct.

In the case of Nave v. Home, supra, a building collapsed and fell into ruins, and the question was whether the insurance covered the remaining materials suitable for use in rebuilding, and the court held that the insurance covered the building as such, and not the materials of which it was constructed.

The case of Huck v. Globe, supra, involved a policy which provided:

" 'If a building shall fall, except as the result of a fire, all insurance by this corporation on it or its contents shall immediately cease and determine.' "

The roof and whole interior of this building, except the elevator, had fallen by reason of the giving way of one of the cellar piers, in consequence of which a fire started. The court held that the building had fallen within the condition expressed in the policy, and the case had no application.

The case of Judah v. Randal, supra, involved a policy of insurance on a chariot which was carried on board ship. On the voyage the box of the chariot was thrown overboard in a storm to lighten the vessel, which arrived safely in port with the remaining portions. It was proven that the box was ordinarily estimated at two-thirds of the value of the whole vehicle. The court held the loss to be total, and applied the rule applicable to marine insurance, viz., that a total loss occurs when the value of the part lost exceeds the value of the part saved, and what was said with reference to identity of the vehicle was of no importance.

These cases cited in Williams v. Hartford, supra, are authorities upon one proposition only, which is that, where the insurance covered a specific object, it did not cover the materials remaining after the specific character of the object had been destroyed, and they were applicable to the point decided,—that the policy covered the building, and not the materials out of which it was constructed.

In the case of Seyk v. Millers, 74 Wis. 67, 41 N. W. 443, it appeared from the evidence that all of the combustible materials in the structure were destroyed by fire, and, although portions of the broken walls were left standing, yet they were useless as walls. Upon the question of total destruction under the Wisconsin statute the court said:

"It cannot be doubted that the identity and specific character of the insured buildings were destroyed by the fire, although there was not an absolute extinction of all the parts thereof. This was

an entire destruction of the buildings within the meaning of the statute."

It will be observed that the court here used the term "identity and specific character," but applied it to a case where the evidence showed that no part of the remaining walls was suitable, in place, for rebuilding.

The Wisconsin court again considered the question in the case of Lindner v. St. Paul, 93 Wis. 526, 67 N. W. 1125. The evidence in that case with reference to the damage showed that the foundation and cellar of the dwelling house were left unharmed, and a great portion of the sills stood upon the top of the stonework. But it was not shown that any considerable part of the building above the foundation could be utilized, in place, for the purpose of rebuilding. The trial court instructed the jury that there was a total loss under the facts of the case, and the instruction was sustained; the court adopting the language above quoted from Seyk v. Millers, supra. So here again the court used the words "identity" and "specific character" with reference to facts where there was no dispute that the building was completely destroyed.

The supreme court of Missouri had the question under consideration in the case of O'Keefe v. Liverpool, 140 Mo. 558, 41 S. W. 922. The building involved in that case was a two-story and foundation brick structure. The published report does not disclose what the facts were as to the extent of the loss, but the court say:

"The great burden of the testimony was to the effect that the front which consisted of iron pillars and brick superstructure, was rendered useless in the condition in which it was left. The pillars were warped and the wall above them sprung out of plumb. The side walls of the lower story were so badly burned, the architects and carpenters testified, that the building could not be repaired; that the old walls would have to be taken down, and the building rebuilt from the foundation up."

Upon these facts the court approved an instruction as follows:

"By a total loss is meant that the building has lost its identity and specific character as a building, and become so far disintegrated that it cannot be properly designated as a building, although some part of it may remain standing."

Here is another case where the court makes use of the term "identity and specific character" with reference to a state of facts where there was no question about the total destruction of the building.

In the case of Hamburg-Bremen v. Garlington, 66 Tex. 103, 18 S. W. 337, the court quoted with approval the instruction given in the California case heretofore quoted, but the subject of insurance was a two-story frame building, which was so nearly destroyed by the fire that no substantial part of it was suitable, in place, for the purpose of rebuilding.

In the case of Royal v. McIntyre, 90 Tex. 170, 37 S. W. 1068, the policy covered a 2½-story frame building, and, according to the owner, the roof was burned off; also the east wall, and the rooms in the attic, as well as the attic floor, were ruined; but the second and lower stories, together with the partitions, doors, windows, blinds, the south, west, and north walls, were still standing in position, and not injured to any great extent. According to defendant's testimony, the building was not burned anywhere on the inside below the attic floor, except a portion in the extreme eastern part of the kitchen and the room over it, and that the building could be repaired without tearing it down. In this case the court reviews many of the authorities upon the question of total loss, and lays down the following rule to determine what is a total loss:

"There can be no total loss of a building so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury; that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis."

This case was distinguished in Murphy v. American (Tex. Civ. App.) 54 S. W. 407, and it was there held as a matter of law that the building was entirely destroyed. The court uses this language:

"In that case [Royal v. McIntyre] the facts clearly show that the building was only partially injured, and the part left standing

and uninjured greatly exceeded in value the part injured, and the building could have been repaired at much less cost than to have rebuilt. * * * No such conditions exist in this case. Only a small portion of the burnt building was used in the construction of the new building, and this was used by the direction of one of the owners of that partition wall, over the protest of the constructors, who considered it unfit for use. The remnant of the burnt building was, in our opinion, under the evidence, inconsiderable, compared with the part entirely destroyed, and did not constitute a sufficient basis upon which to restore the burnt building."

Again, the court say:

"For a remnant of a burnt building to be reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury, it must be a substantial portion of the building remaining standing fit for use, and such as that its identity as a building has not been totally destroyed, or, in other words, the remnant must be of that substantial character as that, when restored or repaired, it will be considered the old structure, and not considered a new one. It is difficult for the court to so define what constitutes a total loss of a building by fire, by which the distinguishing line between a total and partial loss can be determined in all cases, but the distinction must rest upon the particular facts of each case."

The court of appeals certainly did not express itself with clearness by the use of the word "identity," or the language, "the remnant must be of that substantial character as that, when restored or repaired, it will be considered the old structure, and not considered a new one." However, tested by the facts of the case, it appeared, as a matter of law, that the destruction of the building as such was complete.

The rule laid down in Royal v. McIntyre, supra, is approved in Providence v. Board, 49 W. Va. 360, 38 S. E. 679, where the policy covered a two-story brick school house, and the fire started in the roof, burning only the roof and attic. Upon the facts in that case it was held as a matter of law that there was not a total loss. In Corbett v. Spring Garden, 155 N. Y. 389, 50 N. E. 282, the building was

six stories high in front and five in the rear, with an iron front, the side and rear walls being of brick, and used as a warehouse. The roof was burned off, and the interior destroyed; woodwork, sashes, and glass were gone; the iron front was considerably damaged; but the foundation and the four walls remained substantially intact. In reference to the question of total loss the court uses this language:

"A total destruction, within the meaning of the policy, must mean the complete destruction of the insured property by fire, so that nothing of value remains of it, as distinguished from a partial loss, where the property is damaged, but not entirely destroyed. This does not mean that the materials of which the building was composed were all utterly destroyed or obliterated, but that the building, though some part of it may be left standing, has lost its character as a building, and instead thereof has become a broken mass, or so far in that condition that it cannot properly any longer be designated as a building; * * * but the inquiry always is whether, after the fire, the thing insured still exists as a building."

On the facts in that case the court held that, as a matter of law, there was not a total loss, and apparently based its decision upon the principle adopted in marine insurance cases.

The Ohio courts have also passed upon the meaning of the words "total loss" in Pennsylvania v. Drackett, 63 Oh. St. 41, 57 N. E. 962, and, although the opinion in that case was filed more than three years subsequent to the decision in Royal v. McIntyre, supra, no reference is made to that case, or to the principles announced therein. The building involved was a two-story frame house. It does not appear from the opinion to what extent the building was damaged, but the question of total loss was submitted to the jury under certain instructions, and in defining what was total loss the court approved the following language:

"A policy of insurance is upon the building as such and not upon the materials of which it is composed. If you find the identity and the specific character of the insured building was entirely destroyed by fire, then you must find for the plaintiff."

Again:

" 'Although you may find that after the fire a large portion of the four walls were left standing, and that certain parts of the building were left untouched by the fire, still, if you find that the building has lost its identity and specific character, you may find that the building was totally destroyed.' "

With special reference to the words "identity and specific character" the court states:

"Taken in connection with the general charge, there could have been no misapprehension as to the meaning. The terms are not obscure, and convey as well as words can the idea to be expressed by them. A building loses its identity and specific character when it has been so far destroyed by fire that it can no longer be called a building, and the portions that remain cannot be utilized to advantage in rebuilding it. * * * What remaining parts could be made available in rebuilding can only be determined by exercising a sound discretion in the light of the evidence."

It will be observed that the court in this case approves the use of the words "identity and specific character" with reference to total loss, and yet states specifically that the question must be left to the jury to determine according to the facts of each particular case

The Kentucky supreme court has also had the question under consideration in the case of Palatine v. Weiss, 22 Ky. L. 994, 59 S. W. 509. The evidence as to the condition of the walls left standing after the fire was conflicting. Several witnesses for the insurance company testified, in substance, that the foundation and part of the walls left standing were good and suitable for use in rebuilding the structures, while, on the other hand, witnesses for the plaintiff testified that the walls left standing had been condemned by the city inspector of buildings and were required to be taken down. The court approved an instruction to the effect that the jury were to determine whether the building was destroyed totally by the application of the test that its "identity and specific character" had been changed. In reviewing the authorities, the court cites the Wisconsin cases above noted, and Royal v. McIntyre, supra, and said, in reference to those authorities:

"It is the opinion of the court that the words 'total loss' when

applied to a building, do not mean that the materials of which the building was composed were all totally destroyed and obliterated. It is not necessary that all the parts and materials composing the building should be absolutely and physically destroyed, but the inquiry is: Does the insured building, after fire, still exist, preserving substantially its identity, or has it become so broken and disintegrated that it cannot be designated as the structure which was insured?"

It will be observed that the court in this case had in mind two things: First, that it was the building, and not the materials in it, which was covered by the insurance; second, that a total loss occurred when the parts remaining were so broken and disintegrated that the original structure could not be identified or designated; but no rule was adopted by which such a test is to be applied.

In many of the cases in which these terms "identity" and "specific character" were used in the course of the discussion, the writer was defining the subject-matter of insurance, and endeavoring to distinguish the building, as such, from the materials of which it was composed. From a perusal of the principal insurance cases in this country, we think it is evident that the words "identity and specific character" have been used to define total loss only in cases where, according to the facts under consideration, there was substantially a total destruction of the thing insured.

There never has been any successful attempt to define what is meant by these words, except in reference to the specific facts in each case. In one sense the specific character of a building is destroyed when the roof is removed, or the interior burned out, and the balance of the structure is left intact; the damage being comparatively slight. The identity of a building is not destroyed if, from the ruins, the original is recognizable; and yet the damage may be complete, and the loss total. While true that the subject of insurance is the building, and not the materials composing it, when does a building cease to be such, within the meaning of the policy? The object of the contract is to indemnify the insured, and not permit him to speculate at the expense of the insurer; to compel the insurer to pay that indemnity in money or to restore

the structure, and not permit speculation at the expense of the insured. If, then, as a reasonably prudent business proposition, the remaining portions of the building could be utilized, in place, for the purposes of reconstruction or repairing, the insurer must be permitted to exercise its option either to reconstruct, or pay the reasonable cost thereof, as found by the board of arbitrators. If, however, no part of the building remains which can be utilized, then the destruction is complete, and the loss total, and there is no call for arbitration.

Where the line is to be drawn between these two conditions is, in each particular case, a question of fact. It adds nothing to say that total loss occurs when the identity and specific character of the structure is destroyed. We receive no aid from the suggestion that total loss ensues when the reconstructed building would be recognized as a new, rather than the old, structure. No light is thrown on the situation by the declaration that total loss follows from the fact that the remnants constitute a mass of ruins, for amidst the ruins may remain a substantial part of the building.

The question, being one of fact, must be determined by the same test applicable to other cases where it is necessary to adopt a standard of human conduct, and that is, what would a prudent person do under such circumstances?

The rule stated in Royal v. McIntyre, supra, is credited to the English case of Irving v. Manning, 6 C. B. 391, 399. In that case a ship had been so damaged at sea as to require the expenditure of a larger sum to make her seaworthy than she would be worth after the repairs were made, and the court held the loss to be total, applying the following test:

"The question of loss, whether total or not, is to be determined just as if there was no policy at all; and the established mode of putting the question when it is alleged that there has been what is perhaps improperly called a constructive total loss of a ship is to consider the policy altogether out of the question, and to inquire what a prudent uninsured owner would have done in the state in which the vessel was placed by the perils insured against. If he would not have repaired the vessel, it is deemed to be lost."

Reference is also made to the views expressed by Justice Camp-

bell in Brady v. N. W., 11 Mich. 425, approving the English doctrine.

The trial court did not submit the case to the jury upon this theory of the law. Total loss was not conclusively established by the evidence. The requests of appellant fairly presented the law upon that subject, and should have been given, assuming that by "above ground" was meant "above foundation." Ohage v. Union Ins. Co., 82 Minn. 426, 85 N. W. 212. For this error a new trial must be granted.

In arriving at a determination of what a prudent owner would do under such circumstances, it is proper to consider not only the condition of the walls standing, whether they are suitable, in place, to be used as a part of the reconstruction, but also the relative value of such walls, in place, as compared with the cost of rebuilding. It does not follow that, because some part of the remnants may be utilized, in place, there is not substantial and total destruction and loss. The law will not take note of trifles in this respect. It follows that there must remain a substantial part of the building in place, which, with reasonable repairs, can be used in its reconstruction. What such substantial part is is a question of fact depending upon the nature and cost of the structure and the character and condition of the remaining parts, and it was proper to submit to the jury in this case all evidence bearing upon that question, including the condition of the building as left by the fire and the cost of rebuilding.

In view of a new trial we will refer to certain other rulings of the court. As to the relation which the engine house bore to the main structure, it seems to us that this one-story building was a mere appendage to the main building. There was one plant and one business, all being conducted from a central point. Conceding that the engine house was practically uninjured by the fire, the question was not whether it was in itself completely destroyed or only partially so, but whether the entire plant and structure was so affected, and for this reason the ruling of the court on this subject was correct.

As we understand the evidence, the north wall was double, composed of two single walls, which had been fastened together with

iron bolts, one of which belonged to the building under consideration and the other to an adjoining building, which was also damaged by this fire. In the course of the examination of the witness, respondent asked this question:

"Considering that double wall—that north wall—as a wall to be used for two buildings of the character of the two buildings which stood there before the fire, in your opinion how much of that wall could safely and properly remain as a double wall for the two buildings?"

This question was objected to as incompetent and irrelevant, and the answer was received over the objection.

Appellant's theory seems to be: Conceding that the portion of the double wall which remained after the fire was not of sufficient strength to sustain buildings similar to those which formerly stood upon it, yet, taken together, the two walls would be sufficient to support the building in question, if reconstructed, and that appellant would have a right to the use of such double wall for that purpose. It seems apparent that appellant is entitled to no greater rights in that part of the double wall which remained after the fire than it had in the wall as it was constructed and used prior thereto. If, in fact, it was a double wall, bolted together, for the purpose of mutual support, to that part of the building, each wall was dependent upon the other for its solidity, and it would follow that, if a fire damaged the walls so that new ones would have to be built in part, the relative rights of the parties would remain the same. Neither one could assume to absorb the entire strength of the remaining double wall for the purpose of its own building, and hence, if the single wall belonging to appellant was not of sufficient strength, standing alone, to support a reconstruction, then there was a total destruction of appellant's wall, and for that purpose it was proper to show that the double wall remaining was not of sufficient strength to support both buildings. The ruling of the court was correct.

Objection was made and exception taken to the order of the court in directing that the jury should view the premises. We have discussed this question in another case decided concurrently

herewith (Northwestern Mut. Life Ins. Co. v. Sun Ins. Office, infra, page 65), and it will be unnecessary to consider it here.

The order denying the motion for judgment notwithstanding the verdict is affirmed, and the order denying the motion for a new trial is reversed, and a new trial granted.