BRUNOT, J.
 

 I concur in the decree in this case, but I respectfully dissent from the conclusion announced in the opinion with respect to the right of the owner of lands left outside the line of a new levee to compensation therefor.
 

 All of the Oodes of Louisiana have burdened the lands adjacent to navigable rivers within its borders with a public servitude, and the jurisprudence of the state prior to 1921 consistently recognized and enforced the right of the'state, in the exercise of its police power, to use the lands subject thereto without compensation to the owner. In Peart v. Meeker, 45 La. Ann. pp. 422, 423, 12 So. 490, this court said:
 

 “Whatever may be the law elsewhere, we consider the law of Louisiana too well settled to admit of further dispute to the following effect: 'That under article 665 of our Civil Code riparian property on' navigable rivers in this state is subject to a servitude or easement imposed by law for the public or common utility, authorizing the appropriation by the government, un■der proper laws, of the space required for the making and repairing of levees, roads, and other public works; that the state is charged with the administration of this public servitude; that in locating and building levees she does not expropriate the property of the citizens, but lawfully appropriates it to a use to which it is subject under the title itself; that in so doing she acts not under the power of eminent domain, but in the exercise of the police power; that laws, constitutional or statutory, concerning the expropriation of private property for public use and requiring adequate compensation therefor, have no application to property legitimately required for levee purposes; and that private injury resulting from the legitimate exercise of this legal right is damnum absque injuria, to which the individual must submit as a sacrifice to the public safety and welfare.”
 

 Prior to 1866 it was the duty of each reparian proprietor along the Mississippi river to construct and maintain the levee on his land. This duty was enforced through the police juries of the river parishes, and the cost thereof was a lien upon the property. Since 1866 the construction and maintenanecof levees has devolved upon the state, and, for the past 46 years, the federal government, in aid of foreign and interstate commerce, has co-operated in this work.
 

 Article 16, § 6, of the Constitution of 1921, provides for limited compensation to the owner for such portion of his property as. is
 
 actually
 
 used or destroyed for levee purposes. The provision is as follows:
 

 “Section 6. Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes.shall be paid for at a price not to exceed the assessed value for the preceding year: Provided, this shall not apply to batture, nor to property control of which is vested in the state or any subdivision thereof for the purpose of commerce.”
 

 Plaintiff contends that all of his lands now lying between the lines of the old and the new levee have been destroyed, because these lands are outside of the levee line and no longer have levee protection. Use and destroy are terms which have well-defined meanings, and, where the significance of the terms is emphasised, they must be applied in that sense. The Constitution provides for compensation only where property is
 
 actually used or destroyed.
 
 Corpus Juris, vol. 18, p. 975, defines the term
 
 destroy
 
 as follows:
 

 “To break up the structure and organic existence; to demolish; to .dismantle;'to kill; to knock or pull to pieces; to pull down; to raze; to .separate violently into its component parts; to tear down; to unbuild; to wrench apart.”
 

 The term ordinarily implies complete or total destruction. It is true, there are decisions which construe it liberally and apply
 
 *335
 
 it to acts which render the thing useless for the purpose for' which it is intended, but we have been unable to find a sipgle case in which the words
 
 “actually destroyed,”
 
 or
 
 “wholly destroyed,”
 
 have been given a liberal construction, and counsel has cited none. Where the words
 
 actually
 
 or
 
 wholly
 
 are found in the law in connection with the word
 
 destroyed,
 
 the courts have invariably held to a technical construction thereof. In Ampleman v. Citizens’ Ins. Co., 35 Mo. App. 308, 316, the court says:
 

 “The words wholly destroyed as used in the law have necessarily a technical meaning, different from the ordinary meaning of the words in common usage. In common usage they denote a change of form, or substance.”
 

 In this connection Seyk v. Millers’ Nat. Ins. Co., 74 Wis. 67, 41 N. W. 443, 3 L. R. A. 523; German Insurance Co. v. Eddy, 36 Neb. 461, 54 N. W. 856, 19 L. R. A. 707, are in point.' There are a number of decisions in which the foregoing authorities are followed or cited with approval. It is true that they are cases growing out of the destruction of property by fire, but they have application to the case before us, as aids in determining the significance and meaning of the words “actually used or destroyed” as they appear in article 16, § 6, of the Constitution of 1921,.
 

 We are of the opinion that so much of plaintiff’s land which was formerly protected by the old levee, but which is now outside of the line of the new levee, has been rendered valueless for the particular use to which it had been applied. This is not an actual destruction of the land. Man’s ingenuity may render lands useless for any practical purpose, but man’s power has its limitations. (The Constitution makes no provision for compensating the owner of land or improvements thereon, for damage thereto, by reason of the proper exercise of the state’s legal right to change its levee lines, to build new levees, or to maintain its levee system along navigable streams within its borders. Injupies of this character are damnum absque injuria.
 

 Prom the record in this case, we find that 14.50 acres of plaintiff’s land is occupied by the new levee, and 38.93 acres by the berm and borrow pits. So much of the land as was removed from the borrow pits was actually used for levee purposes. It is true that silt deposit from successive flood stages of the river will ultimately refill the pits, but. the time required for it to do so is purely problematical. We are therefore of the opinion that the board of commissioners of the Lake Borgne Basin levee district has actually used 53.43 acres of plaintiff’s land for levee purposes. This land was assessed at $180 per acre during the year preceding its use for levee purposes; therefore the defendant is liable to plaintiff for 53.43 acres, of land at that assessed valuation, or a total of $9,617.40. The decree of the court, is for that sum, and I concur therein.