**AUTO–OWNERS INSURANCE COMPANY, Appellant,**

v.

**SECOND CHANCE INVESTMENTS, LLC, Respondent.**

No. A11–1145.

Supreme Court of Minnesota.

March 20, 2013.

Joseph F. Lulic, Melinda J. Grundhauser, Hanson, Lulic & Krall, LLC, Minneapolis, MN, for appellant.

Michael R. Moline, Monroe Moxness Berg, P.A., Minneapolis, MN; and Jenneane L. Jansen, Kris E. Palmer, Jansen & Palmer, LLC, Minneapolis, MN, for respondent.

Brendan R. Tupa, Udoibok, Tupa & Hussey, P.L.L.P., Minneapolis, MN; and Scott A. Wilson, Minneapolis, MN, for amicus curiae Minnesota Association for Justice.

## OPINION

PAGE, Justice.

This case presents the question of whether the Minnesota standard fire insurance policy, Minn.Stat. § 65A.01 (2012), gives a party to a fire insurance policy the right to have an appraisal panel decide whether a claim involves a total loss. We hold that a party has no such right because the plain language of the appraisal provision in Minn.Stat. § 65A.01, subd. 3, removes disputes "in case[s] of total loss on buildings" from the statutory appraisal process. Because the dispute here is over whether the insured building was a total loss, we affirm.

Respondent Second Chance Investments, LLC (SCI), purchased a fire insurance policy from appellant Auto–Owners Insurance Company that became effective on September 26, 2008, and covered a building with the limit of insurance set at $2,095,500. The valuation clause in the policy, consistent with the Minnesota standard fire insurance policy, provides that "[i]n the event of a total loss[ ] to the dwelling ... [Auto–Owners] will pay an amount equal to the limit of insurance." According to SCI's initial proof of loss, on November 12, 2008, the building suffered extensive fire damage. Seeking payment of the limit of insurance, SCI filed a proof of loss claiming that the building was a "total loss."

On January 12, 2009, EFI Global issued a written report on the loss on behalf of Auto–Owners. In the report, while noting that the building's shell, exterior walls, roof, and floor assembly were reusable, EFI nonetheless concluded that salvaging these parts would not be economical and that the best option would be to demolish

the building frame "from the top down." The EFI report did not include any cost estimates. On January 22, Lindstrom Restoration issued a report on behalf of SCI estimating the cost of restoring the building at $1,654,841, which is approximately $450,000 below the policy limit. However, the estimate did not include the cost of restoring the roof, nor did it include fees for a licensed structural engineer, which had been recommended in EFI's report. SCI contends that the Lindstrom report is incomplete and does not fully reflect the true cost of restoration.

On March 9, Auto–Owners rejected SCI's proof of loss, contending that it did not state the "Actual Cash Value"[1] of the loss as required by the policy or provide a written estimate of repair to support the claim. Auto–Owners subsequently paid the outstanding mortgage balance of $1,038,677 on the building. On July 27, SCI filed a second proof of loss, which included an estimate from AAA Exteriors in the amount of $2,127,000—a cost that exceeded the policy limit. Auto–Owners again rejected the proof of loss, stating that it failed to set out the "Actual Cash Value" of the loss and that the written estimate of repairs needed to be supported by a trade breakdown of rebuilding costs.

On October 8, SCI sent a letter to Auto–Owners asserting that the terms of the policy did not require SCI to state an "actual cash value" other than the limit of insurance because SCI was claiming a total loss. In the letter, SCI demanded that Auto–Owners pay $616,697.74, which was not in dispute and was the difference between the mortgage balance already paid by Auto–Owners and the amount set out in the Lindstrom report. SCI further demanded that Auto–Owners pay the re-

1. According to the policy, the "[a]ctual cash value" is defined as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss."

maining difference between the policy limit and the undisputed amount within 30 days. In response, Auto–Owners attempted to negotiate a release of all claims arising from the fire incident by paying the undisputed amount plus certain miscellaneous costs. SCI rejected the offer, and on October 28, Auto–Owners paid SCI the undisputed amount.

The next day, Auto–Owners wrote to SCI demanding an appraisal pursuant to the policy and Minnesota law. SCI responded that appraisal was not appropriate under the policy language as it was claiming a total loss, but agreed to proceed with an appraisal to preserve its rights. On February 24, 2010, Auto–Owners gave notice that it would not participate in the appraisal process because SCI did not agree that the appraisal panel could render a binding decision as to whether the loss was total. Consistent with that notice, Auto–Owners did not participate in the appraisal that followed.

Ultimately, Auto–Owners filed a complaint in district court seeking an order declaring the rights of the parties under Minnesota law and compelling SCI to submit the issue of whether the building was a total loss to a binding determination by an appraisal panel. In its answer, SCI took the position that an appraisal was not appropriate when the loss at issue is total. SCI also filed a counterclaim alleging that Auto–Owners breached its obligations under the policy when it refused to pay the limit of insurance as required when there is a total loss. Auto–Owners moved to compel SCI to submit to a binding appraisal. SCI moved for partial summary judgment on the issue of whether the loss was total and for an order granting leave to amend its counterclaim to include claims for prejudgment interest and taxable costs.

The district court denied Auto–Owners' motion to compel appraisal and dismissed its complaint, concluding that "[t]he parties did not present and this Court did not locate any case in which a Minnesota court held that a total loss was an issue for appraisers." The district court also denied SCI's motion for partial summary judgment, essentially concluding that there were genuine issues of material fact as to whether the building was a total loss. Finally, the district court granted in part SCI's motion to amend the counterclaim to include taxable costs. The court of appeals affirmed, concluding that a court, rather than an appraisal panel, is the appropriate forum to determine whether the property suffered a total loss. *Auto–Owners Ins. Co. v. Second Chance Invs., LLC,* 812 N.W.2d 194, 201 (Minn.App.2012).

We granted Auto–Owners' petition for review on the sole issue of whether a party to a fire insurance policy has the statutory right to have an appraisal panel decide whether a claim involves a total loss. By way of background, Minn.Stat. § 65A.01, which is commonly referred to as the Minnesota standard fire insurance policy, was enacted in 1895. Act of Apr. 25, 1895, ch. 175, § 53, 1895 Minn. Laws 392, 417–22. The statute mandates that all fire insurance policies issued within Minnesota "conform as to all provisions, stipulations, and conditions" within the statute. Minn. Stat. § 65A.01, subd. 1. The statute is considered a "valued policy" law. *See Nathan v. St. Paul Mut. Ins. Co.,* 243 Minn. 430, 433, 68 N.W.2d 385, 388 (1955) (citation omitted) (internal quotation marks omitted). Such laws were enacted in response to the practice of fire insurance companies writing excessive amounts of coverage, collecting high premiums, and then reducing the amounts of recovery when losses occurred. *See* Winfield V. Alexander, *Insurance: The Wisconsin "Valued Policy" Law,* 10 Wis. L.Rev. 248, 248 (1934–35). Under a valued policy law, the insurer is

less apt to set an excessively high insurable value because when a total loss occurs, the insurer must pay that insurable value and cannot reduce the amount of recovery. *Id.* at 264. Indeed, we have recognized that the purposes of the Minnesota standard fire insurance policy are "[t]o prevent overinsurance by requiring prior valuation" and "avoid litigation by prescribing definite standards of recovery in case of total loss." *Nathan,* 243 Minn. at 433–34, 68 N.W.2d at 388. Thus, in determining whether the insurer is required to pay the limit of insurance, the key inquiry is whether a total loss has occurred as opposed to whether the amount of loss or damage meets a certain threshold.

Consistent with these purposes, the standard fire insurance policy requires the insurer to pay the policyholder an amount equal to the limit of insurance in case of a total loss. Minn.Stat. § 65A.01, subd. 5 ("No provision shall be attached to or included in such policy limiting the amount to be paid in case of total loss on buildings by fire, lightning or other hazard to less than the amount of insurance on the same."). In other words, the statute requires the parties to a fire insurance contract to "agree in advance on a valuation of the property to be insured, and, in the absence of fraud, this valuation is binding" as the amount to be paid when the loss is total. *Nathan,* 243 Minn. at 433, 68 N.W.2d at 388. In contrast, if the property is partially destroyed, the insured recovers the actual amount of loss, whatever that is. *Brooks Realty, Inc. v. Aetna Ins. Co.,* 276 Minn. 245, 252, 149 N.W.2d 494, 499 (1967). In Minnesota, the standard for determining total loss under the standard fire insurance policy is as follows:

> A building is not a total loss ... unless it has been so far destroyed by the fire that no substantial part or portion of it

above ground remains in place capable of being safely utilized in restoring the building to the condition in which it was before the fire. ... There can be no total loss of a building so long as the remnant of the structure left standing above ground is reasonably and safely adapted for use (without being taken down) as a basis upon which to restore the building to the condition in which it was immediately before the fire; and whether it is so adapted depends upon the question [of] whether a reasonably prudent owner of the building, uninsured, desiring such a structure as the one in question was before the fire, would, in proceeding to restore the building, utilize such standing remnant as such basis. If he would, then the loss is not total.

*Nw. Mut. Life Ins. Co. v. Rochester German Ins. Co.,* 85 Minn. 48, 52, 88 N.W. 265, 267 (1901) (internal quotation marks omitted). In applying this standard, we have said that it is necessary to "adopt a standard of human conduct, and that is, what would a prudent person do under such circumstances?" *Id.* at 62, 88 N.W. at 271.

On appeal, Auto–Owners argues that the appraisal provision in Minn.Stat. § 65A.01, subd. 3, unambiguously provides that a party may demand an appraisal unless the loss has already been determined to be total. According to Auto–Owners, when the parties dispute whether a loss is total, that question can be submitted to an appraisal panel for a binding decision. In contrast, SCI contends that the exception in the appraisal provision precludes either party from demanding an appraisal even when the parties dispute whether a loss is total. Giving the words of section 65A.01, subdivision 3, their plain meaning, we conclude that Auto–Owners' argument fails.

■ The parties' dispute presents a question of statutory interpretation, which we review de novo. *See Am. Nat'l Prop. & Cas. Co. v. Loren,* 597 N.W.2d 291, 292 (Minn.1999). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2012). Our first inquiry is whether the statute is ambiguous. *Zurich Am. Ins. Co. v. Bjelland,* 710 N.W.2d 64, 68 (Minn.2006). When a statute's language is unambiguous, our role is to give effect to the statute's plain meaning. *Tuma v. Comm'r of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986). If the language as applied is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16.

We read the plain language of Minn. Stat. § 65A.01, subd. 3, to be unambiguous. Subdivision 3 includes a standard appraisal provision, which provides, in relevant part:

> In case the insured and this company, *except in case of total loss on buildings,* shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand.

Minn.Stat. § 65A.01, subd. 3 (emphasis added). The parties' central dispute is over the meaning of the language "except in case of total loss on buildings."

■ Section 65A.01, subdivision 3, lists two types of disputes that trigger a party's right to demand an appraisal: failure of the insured and the insurer to agree as to (1) the actual cash value or (2) the amount of loss. Thus, a prerequisite to the application of the appraisal provision is that a dispute must exist between the parties.

Given this prerequisite, Auto–Owners' argument that total loss is excluded from the appraisal provision only when total loss has already been determined fails on its face because, as noted, there must be a dispute between the parties before the appraisal provision is triggered. If total loss has already been determined, there can be no dispute between the parties that will trigger the appraisal provision. Once total loss has been determined, the insurer is required to pay the limit of insurance, ending any possible dispute. Therefore, under Auto–Owners' interpretation, the exception would be rendered superfluous because it would only preclude a party from demanding an appraisal when (1) the parties are in agreement and (2) the amount to be paid is already fixed at the limit of insurance according to the valuation clause of section 65A.01. *See* Minn. Stat. § 645.17(2) (2012) (noting that "the legislature intends the entire statute to be effective and certain").

■ Auto–Owners' argument also fails for a more important reason. Because Auto–Owners' interpretation would give no effect to the exception within the appraisal provision, it would in effect amend section 65A.01, subdivision 3, by deleting the words "except in case of total loss on buildings" from the appraisal provision. Clearly, the Legislature did not intend the exception to have no meaning. We have held that " '[a]n exception in a statute exempts from its operation something that would otherwise be within it.' " *City of St. Louis Park v. King,* 246 Minn. 422, 429, 75 N.W.2d 487, 493 (1956) (quoting *State v. Goodman,* 206 Minn. 203, 207, 288 N.W. 157, 159 (1939)). The language "except in case of total loss on buildings," when read in context with the rest of the appraisal provision sentence, can only mean that when the dispute is about total loss, the appraisal provision is not triggered. In

other words, the exception that relates to total loss clearly exempts from the appraisal provision's operation disputes as to total loss. Therefore, when the parties fail to agree as to whether a loss is total under a policy governed by Minn.Stat. § 65A.01, the district court is the appropriate forum to resolve their dispute.

■ Reading section 65A.01 as a whole supports our holding. *See* Minn.Stat. § 645.16 (noting that "[e]very law shall be construed, if possible, to give effect to all its provisions"). The language "except in case of total loss on buildings" is found in two other provisions within section 65A.01, subdivision 3:(1) the provision setting forth the requirements for giving notice of a claim and (2) the provision that explains how the amount of loss is to be estimated. When the same language is used throughout a statute, we presume "that it is used with the same meaning until the contrary is shown." *Christgau v. Woodlawn Cemetery Ass'n*, 208 Minn. 263, 275, 293 N.W. 619, 624 (1940). The notice provision requires the insured to provide a notice of a claim "setting forth the value of the property insured, *except in case of total loss on buildings* the value of said buildings need not be stated." Minn.Stat. § 65A.01, subd. 3 (emphasis added). Applying Auto–Owners' interpretation to the same language in the notice provision would lead to absurd results. *See* Minn.Stat. § 645.17(1)(noting that in ascertaining legislative intent, courts should presume that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable"). First, at the time the insured is required to give notice of a claim, it would

be highly unusual for total loss to have already been determined. Second, if total loss has already been determined, there would be no practical purpose in requiring the insured to provide notice to the insurer because the claim would already have been resolved.

Additionally, the estimate provision states that the "amount of said loss or damage, *except in case of total loss on buildings,* [is] to be estimated according to the actual cash value of the insured property." Minn.Stat. § 65A.01, subd. 3 (emphasis added). Again, Auto–Owners' interpretation of the language "except in case of total loss on buildings" as applied to the estimate provision renders the exception meaningless and flies in the face of the fundamental principle underlying a valued policy law: when the loss is determined to be total, the payout to the insured is fixed at the limit of insurance. Thus, when total loss has been determined, an estimate would serve no purpose. In sum, it would be impossible to give meaning to the provisions of section 65A.01, subdivision 3, as discussed above if we were to accept Auto–Owners' reading of the language "except in case of total loss on buildings."

■ In conclusion, we hold that the plain language of the appraisal provision in Minn.Stat. § 65A.01, subd. 3, removes disputes "in case[s] of total loss on buildings" from the statutory appraisal process.[2] In light of our holding, we affirm the denial of Auto–Owners' motion to compel appraisal and the dismissal of Auto–Owners' com-

---

**2.** Auto–Owners further contends that (1) an appraisal panel has the authority to render a binding decision as to whether a loss is total because deciding the "amount of loss" necessarily includes a determination of whether the loss is total or partial, and (2) that its position

is consistent with the purposes underlying the standard fire insurance policy. Because we hold that Minn.Stat. § 65A.01, subd. 3, removes disputes as to total loss from the statutory appraisal process, we have no need to address these contentions.

plaint.[3]

Affirmed.

STRAS, J., took no part in the consideration or decision of this case.

---

3. We emphasize that nothing in our opinion diminishes the importance of appraisal as a means of securing a " 'plain, speedy, inexpensive and just determination of the extent of the loss.' " *Quade v. Secura Ins.*, 814 N.W.2d 703, 707 (Minn.2012)(quoting *Kavli v. Eagle Star Ins. Co.*, 206 Minn. 360, 364, 288 N.W. 723, 725 (1939)). Indeed, the Legislature has recognized the benefit of appraisal by making appraisal provisions mandatory in insurance policies covering fire and hail damage. *See* Minn.Stat. §§ 65A.01, 65A.26 (2012). We have also recently acknowledged that there is a strong public policy favoring appraisals. *See Quade*, 814 N.W.2d at 707. However, we are not in a position to choose between public policy choices when section 65A.01, subdivision 3, unambiguously addresses the question before us. We are bound by the plain language of the statute. *See Sanchez v. State*, 816 N.W.2d 550, 556 (Minn.2012)("An unambiguous statute must be construed according to its plain language.").